should appear that the total net profits of the road are substantially less than they are at present, which is opposed to all of the experience in relation to railroads of this character in the city of New York. I think, therefore, the court is entitled to assume that this amount will be the minimum amount received in the future. Under the provision of the Constitution, the petitioner is entitled to have the bonds that have been issued to construct this road excluded from the debt limit which this sum of $2,001,472.91 payable yearly will be sufficient to pay the interest, and also provide an amount which received and invested each year will, when the bonds become due, be sufficient to pay the principal. It seems to me the proper method is to ascertain the number and issue of bonds issued for this improvement which will be thus provided for and specifically exclude such bonds. As these bonds have been issued from year to year, the order could specifically identify the·bonds to be excluded by the years in which they were issued. We are dealing on this application solely in relation to bonds issued prior to January 1, 1910. No question is presented as to any other contract indebtedness payable in the future. I do not understand that such contract indebtedness is to be excluded from the city's indebtedness. We have on this application a certain amount of bonds issued for the construction of a rapid transit railroad. The city under this provision of the Constitution is asking that this court fix the proportionate amount of such bonds as are to be excluded, and that proportionate amount of bonds it seems to me is the proportion of the bonds issued which the current net revenue received by the city .will suffice to pay the principal and interest thereon at maturity, so that for such bonds no obligation will eventually fall upon the city of New York. To arrive at this amount will require some calculation which should be furnished by experts and which the city can supply in the shape of proper affidavits. The proposal that the annual payments shall be capitalized on a 3 per cent. basis would seem to be reasonable and such a percentage may be adopted.

The petitioner may submit the necessary proof and proposed decision. All concur.

---

## GARDINER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. June 17, 1910.)

1. PLEADING (§ 129*)—ADMISSIONS—FAILURE TO DENY.

An allegation of the complaint which was not denied by answer was admitted.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 270–275; Dec. Dig. § 129.*]

2. CARRIERS (§ 108*)—GOODS—LIABILITY.

A common carrier is liable for goods as an insurer except as against loss caused by act of God or the public enemy, as well as being liable as an ordinary bailee for hire.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 479, 481; Dec. Dig. § 108.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. CARRIERS (§ 405*)—BAGGAGE—LIMITATION OF LIABILITY.

Plaintiff purchased from defendant railroad company a 50-trip commuter family ticket, issued in conformity to defendant's tariff, which was filed with the Public Service Commissions of certain districts, which ticket provided that, in consideration of the reduced fare, the purchaser agreed that the company's liability for baggage should not exceed $50, and also that it was forfeited if used by persons other than those specified and required the purchaser to sign his name on the back. Laws 1907, c. 429, § 28, requires the filing of schedules showing the rates for transportation of passengers, and requires the schedule to classify the passengers, all privileges granted, and any regulations which may affect the rates, etc., and section 33 provides that nothing in the act shall prevent the issuance of commutation tickets after the carrier has filed with the commission copies of rates, etc. Held, that plaintiff, having accepted the ticket with its limitations of liability as to baggage, which were clearly expressed therein, was bound by such limitations and could not recover damages for loss of baggage in excess thereof, though it was lost through defendant's negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1548, 1549; Dec. Dig. § 405.*]

4. CARRIERS (§ 408*)—BAGGAGE—LIMITATION OF LIABILITY—REASONABLENESS.

Whether or not a limitation in commutation tickets issued by a railroad company as to the amount recoverable for loss of baggage is reasonable cannot be determined by the Appellate Division in the first instance.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1571; Dec. Dig. § 408.*]

Laughlin and Scott, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Edith F. Gardiner against the New York Central & Hudson River Railroad Company. From an interlocutory judgment overruling a demurrer to the amended answer, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, CLARKE, and MILLER, JJ.

Choate & Larocque (Joseph Larocque, of counsel), for appellant.
Alexander S. Lyman (William Mann, of counsel), for respondent.

CLARKE, J. The complaint alleges that the defendant is a common carrier; that on or about the 2d day of November, 1908, the defendant, for a valuable consideration, agreed to carry the plaintiff and her baggage, to wit, a large sole leather bag or suit case, with the contents thereof, consisting of clothing and personal effects of the plaintiff, from Bedford, in the state of New York, on the Harlem Branch of said defendant's railroad, to the city of New York, and that the said plaintiff thereupon delivered to said defendant said baggage, and thereupon proceeded on one of defendant's trains to the city of New York; that, upon arrival in said city, plaintiff demanded the delivery to her of said baggage, but that defendant has refused and neglected to deliver the same, and upon information and belief that defendant has negligently and carelessly lost the same; that the said baggage was of the value of $1,359; and that, by reason of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

carelessness and negligence of the defendant, the said baggage was and is wholly lost to the plaintiff, wherefore she demands judgment in said sum.

For a second and partial defense the defendant alleges: That the said suit case was delivered and received by the defendant for transportation under a written contract contained in a certain ticket known as a 50-trip family ticket, which said ticket was tendered by the plaintiff to and accepted by the defendant for her transportation on the occasion complained of, which said ticket was good for 50 trips if used within one year from the date thereof between Bedford and New York. That said ticket was good for the passage of the person in whose name it was issued, a member of his or her immediate family, a domestic servant employed therein, or a visitor to the family. That in and by the use of said tickets as a token of her right to said transportation the plaintiff held herself out to the defendant as within one of the above-named classes and entitled to transportation as provided in said ticket, and as such obtained and accepted said transportation upon and subject to the conditions of said ticket, and subject to the conditions of the tariff under which said ticket was issued, as herein mentioned. That the said ticket contained the following conditions:

"In consideration of the reduced fare at which this ticket is sold, the purchaser agrees that its use shall be subject to the following conditions: * * * (3) That this company's liability for baggage belonging to each passenger shall not exceed fifty dollars ($50). * * *"

That the plaintiff had knowledge of and assented to the conditions and limitations contained in said ticket. That the said 50-trip family ticket was issued in conformance with the provisions of the defendant's tariff known as No. "1–C Local and Joint Passenger Tariff of Commutation Fares between New York, N. Y., and stations on defendant's Hudson, Harlem, and Putnam Divisions," effective September 1, 1908, and theretofore filed with the Public Service Commissions of the First and Second Districts, respectively, of the state of New York, which said tariff contained in addition to a schedule showing the reduced rates at which the said tickets are sold, among others, the following provisions:

"The following fares and regulations will apply in the sale and acceptance of commutation tickets between New York and stations named herein, superseding all previous fares and regulations covering sale and acceptance of commutation tickets between same stations. * * * (3) Family Tickets. A 50-trip family ticket is good for one year including the date of sale. * * * It will be valid for the passage of person in whose name it is issued (whose signature is required to be affixed to the contract), a member of his or her immediate family, a domestic servant employed therein, or a visitor to the family. (10) Baggage. (a) Wearing apparel only will be checked as baggage on tickets at fares named herein, and for such baggage belonging to one passenger this company will not accept a greater liability than $50. The weight of baggage which will be carried free is explained in the following paragraph: (11) Excess Baggage. Baggage in excess of Free Allowance will be charged for in accordance with excess baggage rates shown in baggage tariff No. 1–B. (P. S. C. 1 N. Y. No. 24 P. S. C. 2 N. Y. No. 209) or subsequent issues thereof."

This partial defense was demurred to upon the ground that it is insufficient in law upon the face thereof. The court overruled the demurrer, and plaintiff appeals.

The complaint alleged that the loss of the baggage was caused by the negligence of the defendant. The partial defense contains no denial. Therefore it stands admitted. The question is thus squarely presented: Can a common carrier by a limitation expressed upon its ticket limit liability for loss due to its own negligence? The common carrier's liability is twofold: First, that of an insurer as against all loss except that caused by the act of God or the public enemy; second, that of an ordinary bailee for hire. In the earlier cases it was held that an exemption from liability must be construed as an exemption from the broad and general common carriers' liability, and did not include an exemption from liability for losses caused by the negligence of the carrier as bailee. It was subsequently established in this state that a carrier might exempt himself from liability for negligence, other than willful or gross, but that to do so the exemption must be expressed in clear and precise terms. Then came the doctrine of the limitation of liability, rather than exemption therefrom. There are many cases in the books upon this topic. In Greenwald v. Weir, 130 App. Div. 696, 115 N. Y. Supp. 311, the cases are collected, and the rule stated as follows:

"Both the federal courts and the courts of this state have uniformly distinguished between shipping contracts, wherein the carrier has undertaken to exempt himself from liability at all, and those in which he has agreed with the shipper as to the amount which should be taken as the value of the goods. Contracts of the first kind have been generally condemned and contracts of the second kind sustained. This distinction rests upon a sure and substantial basis. The contract of carriage by a common carrier imposes upon the carrier a double obligation, that of carriage proper and that of insurer. It is reasonable and customary to fix a rate to be paid with reference to both liabilities, and, in order to fix such rate, it is necessary that the carrier should be apprised of the value of the article to be carried."

And it was there held, as well as in Jonasson v. Weir, 130 App. Div. 528, 115 N. Y. Supp. 6, where the negligence of the carrier was conceded, that where the value had been set forth, or where there was a clause that it should be $50 unless a greater value was stated, by the terms of the contract the defendant's liability was limited to said amount.

The respondent claims upon this special 50-trip family ticket, with its special privileges and its reduced rate, and upon its tariff as posted —both under the provisions of law—that the liability of $50 was a limitation and not an exemption, and, if the plaintiff had not chosen to be bound by such limitation, she could have taken a full ticket upon which the liability would have been limited to $150, and, upon declaration of value and extra payment, unlimited further accommodation. But the appellant claims the cases relied upon are cases where there has been a mutual valuation, where the passenger had the opportunity upon declaring a higher value and payment of an extra rate to increase the liability; that there was no such opportunity given here that the company arbitrarily fixed the amount. It seems to me that the

answer is plain, there was nothing which forced plaintiff to travel upon this restricted ticket, which expressly contained the limitations in consideration of the reduced fare. If she wanted further protection, she should have procured another kind of ticket.

In Steers v. Liverpool, N. Y. & P. Steamship Co., 57 N. Y. 1, 15 Am. Rep. 453, the court said:

"In the case of Belger v. Dinsmore, 51 N. Y. 166, 10 Am. Rep. 575, it was decided that, in the absence of fraud, concealment, or improper practice, the legal presumption is that stipulations limiting the common-law liability of common carriers contained in a receipt given by them for freight were known and assented to by the party receiving it. In that case the decision in Blossom v. Dodd, 43 N. Y. 264, 3 Am. Rep. 701, was examined and shown to be entirely consistent with the conclusion arrived at. I do not perceive any distinction growing out of the fact that in the case before us the subject was the transportation of a passenger and her baggage, which can render the decision inapplicable. * * * Assuming then that we have in the paper in question the contract of the parties, the first inquiry which arises under it relates to the following clause: 'Twenty cubic feet of luggage is allowed to each passenger, free of charge, in consideration of which it is agreed that the company are not to be held liable or responsible for any loss or damage thereto, in any sum, except where the same shall have been proven to have occurred from gross negligence of said company or their servants.' * * * It affirmatively appeared that the plaintiff's luggage was on her going aboard the ship delivered into the custody of the defendant's agents, who assumed the charge of it, and that she could have no further care over it. At the end of the voyage, the defendant did not produce it, nor in any way account for its nonproduction, and all inquiry on the part of the plaintiff was ineffectual. Under these circumstances of actual and exclusive custody on board its own ship at sea, I think the proof was sufficient to make out a case on which a jury might find gross negligence. The clause of the contract before cited was immediately followed by the following provisions: 'Nor in any event shall the passenger demand beyond the sum of fifty dollars, at which said baggage is hereby valued, unless a bill of lading or receipt be signed therefor, specifying the articles and their respective values.' Under this provision, the case of Belger v. Dinsmore, above cited, is a direct adjudication that the recovery could not, in the absence of a bill of lading or such a receipt as the contract called for, go beyond the sum of $50."

In Tewes v. North German Lloyd S. S. Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199, the court said of Wescott v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300, that it was distinctly overruled in Magnin v. Dinsmore, 62 N. Y. 35, 20 Am. Rep. 442, and had never been followed in any of the decisions of the court rendered since then. And of the Magnin Case said:

"Where it was held that a stipulation limiting the amount for which the carrier shall be liable was binding upon the shipper who had notice of the limitation and whose merchandise had been lost by the ordinary negligence of the carrier. * * * In reversing a judgment for the full value of the goods lost, this court said: 'As has been stated, in the absence of agreement for a limited liability, it is the duty of the carrier to make all needful inquiry as to value. But, when the shipper agreed with the carrier for a limited liability, he thereby expresses to the latter his estimate of the risk to be run and of the care needed and holds out the package to him as an ordinary article which he would have no objection to take as of course. The carrier is thereby put off his guard. The shipper might refuse to agree to a limited liability and demand generally carriage upon the common-law liability of the carrier, and then they deal at arm's length, and that would arouse the attention of the carrier, or, at least, would put upon him the duty of inquiry. But, accepting carriage upon the terms of a limited liability, the ship-

per indicates his judgment of the degree of the risk and of needed care; and his silence as to real value is the same as an assertion of mean value, thus keeping the carrier from his adequate reward, and, what is worse, misleading him as to the degree of care and security which he should provide. * * *'
When the Magnin Case came to this court a third time (70 N. Y. 410, 26 Am. Rep. 608). the rule laid down on the second appeal was distinctly reiterated, and it has been followed by this court in several subsequent cases—citing Zimmer v. N. Y. O. & H. R. R. R. Co., 137 N. Y. 460, 33 N. E. 642; Wheeler v. Oceanic Steam Nav. Co., 72 Hun, 5, 25 N. Y. Supp. 578, affirmed, 149 N. Y. 576, 43 N. E. 990.

"It has been suggested that there is, or should be, a distinction between a case where the stipulation is designed merely to limit the carrier's liability as in the case of a passenger whose baggage is carried free of charge, and the case of a stipulation framed for the double purpose of enabling a carrier of goods for hire to obtain proper compensation, as well as to limit his liability if no declaration of value is made by the shipper. At first glance, this suggestion has a plausible appearance, but it does not seem to stand the test of analysis. It is not apparent why a carrier should be subjected to a greater liability in respect of a service which he performs free of charge, or simply as an incident to the carriage of persons, than is imposed upon him in the transportation of merchandise pursuant to a contract in which that is the precise duty which he undertakes for a specified hire."

And in that case the traveler whose trunk was concededly lost by the negligence of the defendant was limited in his recovery to the amount of $50 as expressed upon his passage ticket.

In the Tewes Case the court also referred to the number of well-settled cases which hold that there is a just and logical distinction between an ordinary railroad ticket, which may often be regarded as a mere token, and a passage ticket for an ocean voyage, the sale and purchase of which is usually conducted with such caution and deliberation as to invest the transaction with the elements of a contract, the terms of which the purchaser has ample opportunity to ascertain and understand.

The tickets here under consideration are as special and as different from ordinary railroad tickets as the steamship tickets alluded to. In procuring this book of tickets, the purchaser is required to give his name, which is written in the book. They are not transferable, but limited to the transportation of the persons indicated and forfeited if used by any one else, and are altogether of such a peculiar and special nature as to bring home their limitations and requirements to the person who takes them out. They are intended for commuters coming in and out from suburban places, and for such travelers the limitation upon the personal baggage to be carried and the value thereof is reasonable. Whether so or not is not to be determined by this court in the first instance. The rates have been filed with the Public Service Commission as required by law. Chapter 429, Laws 1907. Section 28 thereof requires the filing of schedules showing the rates, fares, and charges for transportation of passengers and property within the state between each point upon its route and all other points thereon. "The schedules printed as aforesaid shall plainly state the places between which property and passengers will be carried, and shall also contain the classification of passengers, freight or property in force * * * all privileges or facilities granted or allowed, and any rules or regulations which may in any wise change, affect or determine

any part, or the aggregate of, such aforesaid rates, fares and charges, or the value of the service rendered to the passenger, shipper or consignee." And section 33 provides that:

"Nothing in this act shall prevent the issuance of mileage, excursion, or commutation passenger tickets, or joint interchangeable mileage tickets, with special privileges as to the amount of free baggage that may be carried under mileage tickets of one thousand miles or more. But before any common carrier, subject to the provisions of this act, shall issue any such mileage, excursion, commutation passenger ticket, or joint interchangeable mileage ticket, with special privileges as aforesaid, it shall file with the commission copies of tariffs, of rates, fares or charges on which such tickets are to be based."

I think the case at bar comes directly within the Tewes Case, supra, that the limitation of liability was clearly expressed in the special contract of transportation accepted by the plaintiff, who must be deemed to have assented thereto.

It follows that the defense demurred to was sufficient in law as a partial defense, and that the judgment appealed from should be affirmed, with costs and disbursements to the respondent.

INGRAHAM, P. J., and MILLER, J., concur. SCOTT, J., dissents.

LAUGHLIN, J. (dissenting). The material facts are stated in the opinion of Mr. Justice CLARKE, in which I am unable to concur. It is well settled that a shipper or passenger and a common carrier may make a binding contract with respect to the value of the property, whether shipped as freight or baggage, which will limit the amount of the recovery, and this may be done either by an express provision fixing the actual value, or by a valuation specified by the carrier in the bill of lading or ticket, as the valuation agreed upon in the event that a higher valuation is not declared and a higher rate paid. Hart v. Penn. R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Tewes v. North German L. S. S. Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199; Zimmer v. N. Y. C., 137 N. Y. 460, 33 N. E. 642; Steers v. Liverpool, N. Y. & P. S. S. Co., 57 N. Y. 1, 15 Am. Rep. 453; but see Holmes v. North German L. S. S. Co., 184 N. Y. 280, 77 N. E. 21, 5 L. R. A. (N. S.) 650.

In the case at bar, however, the agreement printed by the carrier on the ticket is not a valuation agreement, but is a clear attempt on its part to limit its liability, and in such case the rule is that, although the condition be binding upon the shipper or passenger, it will be construed as a limitation on the carrier's liability as insurer and not upon its liability as a bailee for hire, and therefore will not be construed as relieving the carrier from liability for its own negligence, which is alleged here and admitted, unless it is expressly so provided or such intention is so clearly expressed that it cannot be misunderstood by a shipper or passenger of ordinary intelligence. Condict v. Grand Trunk R. R. Co., 54 N. Y. 500; Rathbone v. N. Y. C. & H. R. R. R. Co., 140 N. Y. 48, 35 N. E. 418; Bermel v. N. Y., N. H. & H. R. R. Co., 62 App. Div. 389, 70 N. Y. Supp. 804, affirmed on opinion of App. Div. 172 N.

Y. 639, 65 N. E. 1113; Mynard v; Syracuse, etc., R. R. Co., 71 N. Y. 180; 27 Am. Rep. 28; Nicholas v. N. Y. C. & H. R. R. R. Co., 89 N. Y. 370; Holsapple v. Rome, W. & O. R. R. Co., 86 N. Y. 275; Kenney v. N. Y. C. & H. R. R. R. Co., 125 N. Y. 422, 26 N. E. 626. See, also, Holmes v. North German L. S. S. Co., supra. These authorities require, I think, that the contract pleaded by the defendant be not construed as relieving it from liability for its own negligence.

I am of opinion, therefore, that the interlocutory judgment should be reversed and the demurrer sustained, with costs to appellant to abide the event.