## HOMER v. OREGON SHORT LINE RAILROAD COMPANY.

No. 2397.   Decided December 5, 1912.   Writ of Error Granted to Supreme Court of the United States, December 18, 1912 (128 Pac. 522).

1. CARRIERS—RIGHT TO LIMIT LIABILITY.   A common carrier may limit its common law liability for loss of property as an insurer.   (Page 33.)

2. CARRIERS—LIMITATION OF LIABILITY—OPERATION AND EFFECT— "AGREEMENT LIMITING LIABILITY FOR NEGLIGENCE."   A condition contained in a railroad ticket that the carrier assumed no liability for baggage, except for wearing apparel, and then only for $100 in value, unless a contract for a greater value was made in writing, and a rule or regulation to the same effect filed . with the Interstate Commerce Commission, did not constitute an agreement limiting the carrier's liability for its own negligence resulting in loss of baggage.   (Page 33.)

3. COMMERCE—INTERSTATE COMMERCE COMMISSION—JURISDICTION OF COURTS.   A person seeking to recover from a carrier money which he was required to pay in excess of some established interstate rate, or to recover damages for discrimination against him, or who attacks the reasonableness of a rate, rule, charge, or privilege, governing interstate commerce, must present his claim to the Interstate Commerce Commission for examination and adjustment before he can bring an action in the courts. (Page 34.)

4. COMMERCE—INTERSTATE COMMERCE COMMISSION—JURISDICTION OF COURTS.   A passenger may bring a common law action in a state court for the loss of her baggage through the negligence of an interstate carrier without first presenting her claim to the Interstate Commerce Commission, although such carrier has filed with that commission a rule or regulation limiting its liability for the loss of baggage, since such an action does not constitute an attack upon the reasonableness of the carrier's

regulations, but is based on the carrier's failure to discharge a common law duty.   (Page 35.)

5. CARRIERS—LOSS OF BAGGAGE—ACTIONS.   A carrier which permitted a stranger to enter its baggage room and failed to watch him, thus permitting him to exchange the checks on his own trunk and that of another passenger, thereby obtaining possession of the other passenger's trunk, was negligent as a matter of law, and hence the court did not err in refusing to submit this question to the jury.   (Page 38.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Charlotte A. Homer against the Oregon Short Line Railroad Company.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*P. L. Williams, Geo. H. Smith* and *Jno. V. Lyle* for appellant.

*Weber & Olson* for respondent.

### APPELLANT'S POINTS.

A common carrier, in the absence of statutory regulation to the contrary, may by an express contract which is just and reasonable and fairly entered into with the shipper, limit its common law liability for the loss of or damage to property consigned to it for transportation.   (*Benson v. O. S. L. R. R. Co.,* 35 Utah, 24, —— Pac. ——; *Larson v. O. S. L. R. R. Co.,* 38 Utah, 130, —— Pac. ——; *Greenwald v. Weir,* 115 N. Y. Supp. 311, aff'd 199 N. Y. 170; *Gardner v. N. Y. C. & H. R. R. Co.,* 123 N. Y. Supp. 865; *Tewes v. North German Lloyd Steamship Co.,* 186 N. Y. 151; 13 I. C. C. Rep. 550; *Railroad Co. v. Fraloff,* 100 U. S. 24; *The Kensington,* 183 U. S. 263; *Hart v. Pa. R. Co.,* 112 U. S. 331; *Southern Ry. v. Jones,* 31 So. 501; *Railway Co. v. Weakley,* 50 Ark. 397; *Donolon v. S. P. Co.,* 91 Pac. 603; *Michal-*

*itschke v. Wells Fargo Co.,* 118 Cal. 683; *Pierce v. Railroad Co.,* 120 Cal. 156; *Coupland v. Railroad Co.,* 61 Conn. 31, 23 Atl. 870; *Central R. R. Co. v. Hall* [Ga.], 52 S. E. 679; *Railroad Co. v. Johnson King & Co.,* 121 Ga. 231, 48 S. E. 807; *Oppenheimer v. Express Co.,* 69 Ill. 62; *Adams Express Co. v. Carnahan* [Ind.], 63 N. E. 245, 64 N. E. 647, 94 Am. St. Rep. 279; *Russell v. Pittsburg, etc. R. R. Co.,* 157 Ind. 311, 61 N. E. 678; *Railroad Co. v. McKinney,* 34 Ind. App. 402, 73 N. E. 148; *Express Co. v. Joyce,* 72 N. E. 865; *Squire v. N. Y. C. R. R.,* 98 Mass. 239; *Graves v. Lake Shore Ry. Co.,* 137 Mass. 33; *Graves v. Express Co.,* 176 Mass. 280; *John Hood v. American Exp. Co.,* 77 N. E. 638; *Brehme v. Dinsmore,* 25 Md. 329; *Alair v. Railroad Co.,* 43 Minn. 160, 54 N. W. 1072, 39 Am. St. Rep. 588; *O'Malley v. Ry. Co.,* 86 Minn. 580, 90 N. W. 974; *Harvey v. Terre Haute R. Co.,* 74 Mo. 538; *Vaughn v. Railway Co.,* 78 Mo. App. 639; *Zimmer v. R. Co.,* 137 N. Y. 460; *Toy v. R. Co.,* 56 N. Y. Supp. 182; *Gardner v. Ry. Co.,* 127 N. C. 293, 37 S. E. 328; *Railroad Co. v. Hubbard,* 72 Ohio, 302, 74 N. E. 214; *Normile v. Railroad & Nav. Co.,* 41 Ore. 177, 69 Pac. 928; *Ballou v. Earle,* 17 R. I. 441, 22 Atl. 1113; *Johnstone v. Railroad Co.,* 39 S. E. 55, 17 S. E. 512; *Louisville, etc., R. Co. v. Lowell,* 90 Tenn. 17, 15 S. W. 837; *Starnes v. Railroad Co.,* 91 Tenn. 516, 19 S. W. 675; *Hill v. Railway Co.,* 33 Wash. 697, 74 Pac. 1054; *Ullman v. Ry. Co.,* 112 Wis. 150, 88 N. W. 41; *Gerry et al. v. American Express Co.,* 62 Atl. 498.)

All facilities and privileges to be accorded that are of value in the transportation service must be incorporated in the schedules, which are filed and published in accordance with the Interstate Commerce Act. (*Pa. Millers' State Assn. v. P. & R. Ry. Co.,* 8 I. C. C. Rep. 531; *Carr v. N. P. Ry.,* 9 I. C. C. Rep. 1; *Central Yellow Pine Assn. v. The Vicksburg, Shreveport & Pac. Ry. Co. et al.,* 10 I. C. C. Rep. 193; *Blackman v. So. Ry. Co.,* and *Blackman v. The Columbia, Newberry & Laurens R. Co.,* 10 I. C. C. Rep. 352.)

Where the published schedules have been departed from, it will be observed that regardless of hardships or inconven-

42 Utah 2.

ience that may attend any particular instance, the provisions of the law are strictly enforced both against shipper and carrier, and that the tariff provisions, both as to rates and conditions are binding upon all alike, and cannot be departed from without a violation of the act. (*C. B. & Q. Ry. Co. v. Feintuch,* 191 Fed. 482; *L. & N. Ry. v. Dickerson,* 191 Fed. 705; *B. & O. R. Co. v. Hamburger,* 155 Fed. 849.)

Until the Commission—which is empowered with the authority for establishing, maintaining or altering rate schedules and for redressing injuries, has acted upon the tariff, no court has authority to declare any term, condition or provision of the lawfully established tariffs unreasonable, in violation of the rate law. (*Robinson v. B. & O. Ry.,* 222 U. S. 560; *T. & P. Ry. v. Abilene Cotton Seed Oil Co.,* 204 U. S. 426; *Atlantic Coast Line v. Macon Groc. Co.,* 166 Fed. 206; *Columbia Iron & Steel Co. v. K. & M. Ry.,* 171 Fed. 713; *Houston C. & C. Co. v. N. & W. Ry.,* 171 Fed. 723.)

The legal effect of the requirements of the act are that the carrier is required in advance to give notice to the public that it will undertake to transport passengers or freight for a given charge and upon certain specified terms and conditions. All this constitutes an offer on the part of the carrier to the public who may seek to deal with it, that it will perform certain services under certain conditions and for certain prices. By the provisions of the law, when it has done this, it is forbidden to make any other offer, or to furnish its services upon any other terms or conditions. When, therefore a passenger or shipper, knowing in advance what the offer of the carrier is, comes along and purchases transportation either for his person or his property, he thereby makes a contract and there is thereby a meeting of the minds of the two parties upon the published offer and conditions of the carrier. The offer, in other words, is accepted and a contract thereby created according to the terms of the offer. (*Armour Packing Co. v. U. S.,* 209 U. S. 56; *Kansas City So. R. v. Albers Com. Co.,* 223 U. S. 573; *Chicago & Alton*

*R. Co. v. Kirby,* decided by the U. S. Supreme Court May 27, 1912, not yet officially published [Advance sheets July 1, 1912, p. 648.]; *Nat'l Assn. Letter Carriers v. A. T. & S. F. R. Co.,* 20 I. C. C. Rep. 6; *Dells Paper & Pulp Co. v. C. & N. W. R. Co.,* 20 I. C. C. Rep. 419.)

When the tariffs have been issued as required, knowledge of their contents is given to the world, and every patron of the railroad company is charged with knowledge of the terms and conditions of the tariff governing the transportation that is purchased and he is bound by the provisions contained therein, whether he actually knows them or not. (*Chicago & Alton R. Co. v. Kirby, supra; Gulf, Colo., S. F. Ry. v. Hefley,* 158 U. S. 98; *T. & P. Ry. Co. v. Mugg,* 202 U. S. 242; *Armour Packing Co. v. U. S.,* 209 U. S. 56; *K. C. So. Ry. v. Albers Commission Co.,* 223 U. S. 573.)

### RESPONDENT'S POINTS.

The carrier cannot limit its liability as against its own negligence unless there has been a contract in which the value of the goods shipped has been fairly agreed upon; or as stated by eminent authority: "The stipulation is void as against loss due to the carrier's negligence or other misconduct if the specified amount does not purport to be an agreed valuation, but has been fixed arbitrarily by the carrier without reference to the real value. The stipulation is void as against loss due to the carrier's negligence or other misconduct if the specified amount, while purporting to be an agreed valuation, is in fact purely fictitious and represents an attempt to limit the carrier's liability to an arbitrary amount." (13 I. C. C. Rep. 550, and cases cited; *Eells v. St. Louis, etc., Ry. Co.,* 52 Fed. Rep. 903, 907; *Railway v. Wynn,* 88 Tenn. 320; *Alabama, etc., Ry. Co. v. Little,* 71 Ala. 611.)

In the limitation of liability the carrier cannot, in any event, stipulate for more than an exemption from the extraordinary liability the common law imposes; the liability extending beyond that of ordinary paid agents, servants, or bailees, denominated the liability of an insurer. Public

policy, and every consideration of right and justice, forbid that he should be allowed to stipulate for exemption from liability for losses or injuries occurring through the want of his own skill or diligence, or that of the servants or agents he may employ, or through his own or their willful default or tort. . . . The carrier cannot stipulate for an absolute, unqualified exemption from all liability, nor can he stipulate that he will answer, in any and all events, only for a sum less than the value of the goods, because in consideration of reduced rates of freight the shipper may assent to it. (*Alabama Great Southern Railway Company v. Little,* 71 Ala. 611; *Scruggs v. Baltimore, etc., R. R. Co.,* 5 McGrary, 590; *Ormsby v. U. P. R. R. Co.,* 4 Fed. Rep. 706; *Judson v. Western R. R. Corporation,* 6 Allen 88; *Adams Express Co. v. Stettaners,* 61 Ill. 184; *Ga., Pacific Ry. Co. v. Hughart,* 90 Ala. 36; *Ga. R. R. Co. v. Keener,* 93 Ga. 808; *Ullman v. C. & N. W. Ry. Co.,* 112 Wis. 150; *Railway Co. v. Sowell,* 90 Tenn. 17; *Rosenfield v. Peoria, Decatur & Evansville Ry. Co.,* 103 Ind. 121, 53 Am. Rep. 500; *Western Railway Co. v. Harwell,* 91 Ala. 340; 4 Elliott on Railroads, 2336; note 14 L. R. A., pp. 434, 435; 6 Cyc., title "Carriers," p. 400, b.; Hutchinson on "Carriers" [3 Ed.], secs. 425-427.)

Of course where the pretended agreed valuation is not such in fact, but is simply a cloak for a limitation of liability to a fixed sum, which is less than the real value, the contract will not be valid as against a loss due to negligence. (6 Cyc. 401; *Ga. R. Co. v. Keener,* 93 Ga. 808, 44 Am. St. Rep. 197; 1 Hutchinson on Carriers, sec. 427; 4 Elliott on Railroads, secs. 1497, 1505, 1510; *French v. Merchants & Miners Transportation Co.,* 19 L. R. A. [N. S.] 1006 and notes; *Union P. Co. v. Stupeck* [Colo.], 114 Pac. 646; *Colorado N. S. Ry. Co. v. Manatt* [Colo.], 121 Pac. 1012. See also dissenting opinion in *Tewes v. No. German Lloyd Steamship Co.,* 8 L. R. A. [N. S.] 199 and notes; *McElvain v. St. L. & S. F. R. R.* [Mo.], 131 S. W. 736.)

For misdelivery of the baggage of a passenger the carrier will be liable without regard to negligence on his part as for

conversion. (6 Cyc. 671-672; *Waldman v. Chicago R. Co.,* 1 Dak. 351, 46 N. W. 456.)

The carrier delivering goods to a person not entitled to receive them, is liable to the person who is entitled to them for conversion, and it is immaterial that the delivery was secured by the third party through mistake or fraud, even though the carrier acting in good faith was imposed upon by such person. (6 Cyc. 472; *Adams Express Co. v. B. & W. Co.,* 35 App. D. C. 208; 31 L. R. A. [N. S.] 309 and notes; *Salberg v. Pen. Ry. Co.,* 31 L. R. A. [N. S.] 1178 and notes; 4 Elliott on Railroads, sec. 1526; 4 Elliott on Railroads, sec. 1659; 2 Thompson on Trials, sec. 1837; *Ga. S. & F. R. R. Co. v. Johnson,* 48 S. E. 807.)

The pivotal question is whether the limitation as to liability for loss of baggage transported without extra charge is part of the passenger rate or tariff, or whether it is a subsidiary incident to the main matter of fare. We are of opinion that it is not an essential element in the fare for transportation of passengers. Limitation of liability by contract in case of loss has not been abolished by the Interstate Commerce Act. Reasonable agreements, in this regard are upheld. This is a subject, about which the policy established in the several states prevails, since as well as before the enactment of the federal statutes. Hence an agreement inserted in a bill of lading limiting liability in case of loss has been held invalid if contrary to the law of a state, even though made the basis of a contract of interstate carriage. (*Hooker v. B. & M. R. R. Co.,* Am. Ann. Cases 1912 B 669; *Miller v. C. B. & Q. R. Co.* [Neb.] 123 N. W. 449; Judson on Interstate Commerce [2 Ed.], secs. 32 and 33.)

FRICK, C. J.

This action was brought by respondent as a passenger to recover damages for baggage lost by appellant as a common carrier. Respondent, in her complaint, after stating that appellant was a corporation and a common carrier of passengers, in substance alleged that on the 15th day of March, 1910, she purchased from appellant at Salt Lake City, Utah,

for the sum of sixty-one dollars, a ticket entitling her to be carried as a passenger, with her baggage consisting of a trunk and contents, from Salt Lake City, Utah, to Los Angeles, Cal., and return; that appellant issued to respondent a check for said trunk at Los Angeles, Cal., and received and carried the same on its baggage car, and also received and carried respondent upon its passenger train running between Los Angeles and Salt Lake City; that, pursuant to the ticket purchased and the check issued as aforesaid, appellant was required to deliver said trunk and contents to respondent at Salt Lake City on demand; that within a reasonable time after arriving at Salt Lake City respondent presented said check to appellant at its baggage room at Salt Lake City, and then and there demanded her baggage; "that by the neglect and improper conduct of said defendant (appellant) and its servants in failing to exercise reasonable care in guarding and keeping said trunk and baggage the said trunk of the plaintiff (respondent) was wrongfully delivered and was misdelivered by the defendant to some person or persons unknown to plaintiff, and was by the person or persons to whom it was so wrongfully and negligently delivered by the defendant broken open, and the goods and baggage of the plaintiff therein and hereinafter described were taken therefrom and damaged, stolen, and totally lost." Then follows a description of the articles that were lost and which were never returned to respondent, and also a list of those that were received from the pawnshops (where they had been pawned) in a damaged condition, the extent of the damage to which was fully set forth. The value of the articles that were lost was alleged to be $480, and the damage to those that were injured, but obtained by respondent as aforesaid, was alleged to be $236.75. She therefore prayed judgment for the sum of $716.75, with interest and costs.

Appellant in due time filed an answer to the complaint, in which it admitted that it was a corporation, but denied that it was a common carrier of baggage or passengers, or a common carrier for any purpose, between Los Angeles, Cal., and Salt Lake City, Utah. Appellant admitted that re-

spondent at the time and place stated in the complaint purchased a railroad ticket from it which entitled her to be transported from Salt Lake City, Utah, to Los Angeles, Cal., and return. Appellant denied all other allegations of the complaint. As affirmative defenses, appellant, in substance, alleged that at the time stated in the complaint "it had no line of railroad extending to California points, or west to California beyond the city of Ogden," Utah; that on or about March 15, 1910, appellant sold to respondent a certain railroad ticket which entitled her to transportation for herself and the carriage of a certain quantity of personal baggage from Salt Lake City, Utah, to Ogden, Utah, over the lines of appellant, and from Ogden, Utah, "to San Francisco, Cal., and thence to Los Angeles, Cal., and return via the same route over the lines of railroad of the Southern Pacific Company;" that appellant and said Southern Pacific Company at all times stated in the complaint were common carriers subject to the act of Congress approved February 4, 1887, commonly called the "Interstate Commerce Act" (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), and particularly as said act was amended on June 26, 1906 (Act June 26, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1911, p. 1284.]). The appellant specifically set forth in its answer that it had complied with all the provisions of said interstate act; that it had duly filed with the Interstate Commerce Commission its rates, charges, rules, and regulations governing passengers and their baggage; and that, pursuant to said regulations, the ticket purchased by respondent and which entitled her to transportation as aforesaid contained a limitation whereby appellant's liability for loss of personal baggage consisting of wearing apparel was limited to a sum not in excess of $100; that said ticket was sold and purchased pursuant to the rates, charges, rules, and regulations filed with the Interstate Commerce Commission; and that, in consideration of the reduced rate for which said ticket was sold, appellant's liability for the loss of said baggage was limited to $100 as aforesaid.

At the trial of the case the facts that were either conceded or established without dispute are in substance as follows: On March 10, 1910, the husband of the respondent went to the ticket office of appellant, and requested a "round-trip" ticket for his wife from Salt Lake City to Los Angeles, and the agent sold him such a ticket for sixty-one dollars, which was held until the respondent reached the office, when she signed the same in presence of the agent, and immediately thereafter went to the station and boarded a train for Los Angeles via San Francisco; that, when the ticket in question was purchased, there was nothing said by the agent or anyone else about any other class of tickets that could be obtained, or with respect to any other rate. The husband also testified that before going to the railroad office he telephoned to the agent for rates, and that the agent advised him that the sixty-one-dollar rate was the lowest rate obtainable. It was also shown that the respondent intended to make a visit at Los Angeles of about six months' duration, and for that reason took with her considerable wearing apparel in her trunk; that, when she was ready to return home, she checked her trunk at Los Angeles for the return trip to Salt Lake City, and she and the trunk arrived safely at Salt Lake City; that immediately after the trunk had arrived at Salt Lake City a stranger asked the baggageman in charge at appellant's depot to admit him to the baggage room of appellant for the purpose, as he said, of obtaining something from his trunk, which was checked, and was in the baggage room aforesaid; that on being admitted to the baggage room in presence of, but without being watched by, the baggage man, the stranger removed the strap containing the check from his trunk, and also removed the strap and check from respondent's trunk and exchanged them, placing his strap and check on her trunk and hers on his, and in that way obtained the duplicate check for respondent's trunk. The exchange of checks made as aforesaid was not discovered by the baggageman, and respondent's trunk was subsequently delivered by appellant to the stranger, and his trunk, upon surrender of the check she held, was delivered to her, and,

upon such delivery being made, it was discovered that her trunk had been delivered to some one else. The stranger broke open respondent's trunk, removed the articles therefrom, and pawned or sold them to pawnbrokers in Salt Lake City. Some of the articles she received from the pawnbrokers in a damaged condition, and many of them she never obtained. It was also conceded by respondent at the trial that appellant had complied with all the provisions of the so-called Interstate Commerce Act, and had duly filed its rates, charges, rules, and regulations with the Interstate Commerce Commission as provided in the act, whereupon the court excluded its offer to prove that it had filed its rates, charges, and regulations governing the carriage of passengers and baggage with the Interstate Commerce Commission. The court also excluded appellant's offer to prove that the ticket purchased by respondent contained certain conditions and limitations respecting its liability for loss of baggage, to which limitations we shall again refer hereafter. The court also excluded appellant's offer to prove that it had filed a statement containing the same limitations contained in the ticket with the Interstate Commerce Commission as a part of its rules and regulations governing the transportation of passengers and their baggage. The court further excluded appellant's offer to prove that it had also filed with the Interstate Commerce Commission an additional rate from Salt Lake City to Los Angeles and return of $82.90, which rate entitled the purchaser to a ticket in which no limitation with respect to baggage was imposed. And, in short, the court excluded all evidence relating to what was contained in the matters filed with the Interstate Commerce Commission.

Upon substantially the foregoing evidence the court, with respect to appellant's liability, charged the jury as follows:

"It is admitted in this case that plaintiff was a passenger of the defendant and intrusted to the defendant a certain trunk and its contents, and the manner of the loss of any article out of that trunk, if they were lost, is not in dis-

pute, and under such admissions and the undisputed facts in this case the court instructs you that the defendant is liable to the plaintiff for the reasonable value of any baggage lost, if any, from said trunk by reason of the failure of the defendant to deliver the trunk to plaintiff. The court instructs you that plaintiff was entitled to take as baggage such articles of wearing apparel and other articles as are ordinarily taken by travelers such as plaintiff for their personal use, comfort, gratification, or convenience upon such a journey as plaintiff was taking, and for the loss of any such articles the defendant would be liable."

Appellant took no exception to this instruction. It, however, requested the court to charge the jury as follows:

"The court charges you that if you find from the evidence in this case that the plaintiff checked as baggage personal wearing apparel belonging to her on the ticket referred to in this case for transportation as baggage on said ticket to Salt Lake City, and if you further find that any part, or all, of such wearing apparel so checked by her came into the possession of the Oregon Short Line Railroad Company in the regular course of being transported as baggage on the ticket in question, but that the same in whole or in part was lost or destroyed and not delivered to her at Salt Lake City, then you are instructed that she would be under such circumstances entitled to recover in such case for the actual value of such articles of wearing apparel not to exceed in any event the sum of one hundred dollars ($100)."

The court refused the request, and the appellant saved an exception. The jury returned a verdict in favor of respondent in the sum of $350.75 as the value of the articles lost and damaged, and added legal interest to said sum. The court entered judgment in accordance with the verdict, to reverse which this appeal is prosecuted.

In view that appellant's counsel very vigorously contend that the trial court had no authority to try the case, but, if it did have jurisdiction, it nevertheless grievously erred in its rulings, we shall in counsel's own language state the

grounds upon which they ask a reversal of the judgment, which are as follows:

"The rules and principles of law involved in the issues and under the facts of this case, and which demonstrate the errors that the court below committed, may be stated briefly as follows:

"First. In the absence of statutory prohibitions, the general rule is that the carrier may limit its common-law liability by agreement with the passenger or shipper, even though the loss or damage be due to the carrier's negligence.

"Second. By the express terms of the Interstate Commerce Act of Congress, approved February 4, 1887, and the acts amendatory thereof and supplemental thereto (24 St. L. 379; 3 Fed. St. Ann. 809-827; 34 St. L. 584; Fed. St. Ann. Supp. 1909, pp. 255-266), interstate carriers are required to issue and file with the Interstate Commerce Commission printed schedules of rates, fares, and charges for transportation of persons and property, and to include in such schedules all rules, regulations, and conditions which enter into or affect the value of the services to be performed. These schedules can only be changed upon notice printed and filed with the Commission as provided by the act, a departure from the terms thereof, either by the carrier or shippers, is a violation of the law, and imposes a penalty upon both carrier and shipper. It is also provided that such carriers shall not engage or participate in interstate transportation unless such schedules have been issued and filed: *nor shall any such carrier extend to any person any privilege or facility in transportation of person or property, except upon the terms and conditions specified in said tariff schedules.*

"Third. When these tariff schedules required by the act to have been published and filed, the rates, fares, charges, privileges and advantages and conditions therein specified become the only terms and conditions upon which the transportation may lawfully be undertaken or performed.

"Fourth. The purpose of the requirement of the act to publish, file, and keep open for inspection, etc., the tariff

schedules is to give notice to the public of the charges, terms, and conditions for the service to be performed, and the passenger or shipper is charged by the law with knowledge of the contents of these schedules. Their terms are binding alike upon passenger, or shipper, and carrier.

"Fifth. The terms and conditions of these schedules therefore become by operation of law the only lawful terms upon which the carrier may contract with the shipper or passenger for transportation of persons or property, and, whenever a passenger purchases transportation for himself and his luggage from an interstate carrier, a contract is thereby made upon the terms and conditions contained in the schedules governing that particular transportation. The contract and all its terms are binding upon both alike, and no other or different terms can be imposed upon either.

"Sixth. Finally, the entire subject of interstate commerce or transportation is within the exclusive jurisdiction of the federal government, and, it having legislated upon the whole subject, the rights and liabilities of the parties in this action are governed and controlled by federal authority, and cannot be modified or superseded by state law or rule of decision. There can, therefore, be no recovery against this defendant beyond the limited amount of $100 specified in the tariff schedules consistently with the provisions of the interstate commerce law, because to do so would necessitate an unlawful departure from the provisions of the lawfully existing tariff schedules applicable to the transportation."

The foregoing contentions are based on the last amendment of section 6 of the Interstate Commerce Act (Act June 8, 1910, c. 309, sec. 9, 36 Stat. 548 [U. S. Comp. St. Supp. 1911, p. 1289]). (See Fed. St. Ann. Supp. 1909, p. 260.) In the briefs of counsel for both parties it is insisted that the law applicable to this case is correctly stated by the Interstate Commerce Commission in the Matter of Released Rates, 13 Interst. Com. C. Rep. 550, where in the headnote the law is stated in the following words:

"If a rate is conditioned upon the shipper's agreeing that the carrier's liability shall not exceed a certain specified value, (a) the stipulation is valid when loss occurs through causes beyond the carrier's control; (b) the stipulation is valid, even when loss is due to the carrier's negligence, if the shipper has himself declared the value, expressly or by implication, the carrier accepting the same in good faith as the real value, and the rate of freight being fixed in accordance therewith; (c) the stipulation is void as against loss due to the carrier's negligence or other misconduct if the specified amount does not purport to be an agreed valuation, but has been fixed arbitrarily by the carrier without reference to the real value; (d) the stipulation is void as against loss due to the carrier's negligence or other misconduct if the specified amount while purporting to be an agreed valuation, is in fact purely fictitious and represents an attempt to limit the carrier's liability to an arbitrary amount."

In view that counsel for both parties agree that the law with respect to limiting the carrier's liability for loss of baggage is the same as for loss of other property intrusted to the care of the carrier for transportation, and since both sides claim the foregoing statement of the Interstate Commerce Commission to be a correct exposition of the law respecting the carrier's liability, we, for the purposes of this decision, shall also assume the same to be a correct statement of the law applicable to the case at bar. Appellant contends that in view of the conditions that were a part of the ticket sold to respondent it was not liable for baggage in excess of $100, hence it contends the court erred in refusing its requested instruction to that effect. The conditions referred to are as follows:

"In issuing and selling this ticket for passage over other transportation lines, this company acts only as agent for such lines, assumes no responsibility beyond its own lines, and assumes no liability either for itself or the lines represented on this ticket for baggage, except for wearing apparel, and then only for one hundred dollars in value, unless a contract in writing is made for a greater value. This ticket is void unless officially stamped and dated, and the coupons belonging to it will be void if detached."

Appellant also offered to prove that it had filed with the Interstate Commerce Commission as a part of its rules and

regulations governing the carriage of passengers and baggage the following:

"Baggage Allowance and Liability. 150 pounds of personal baggage will be checked on each full ticket and 75 pounds on each half ticket. Charge will be made for excess weight in accordance with the following tariffs, or succeeding issues thereof: . . . Liability for baggage in the possession of any of the companies over which these tickets read whether same is checked or unchecked, in transit or in storage, is limited to wearing apparel not exceeding $100 in value for a whole ticket and $50 for a half-ticket."

It is strenuously urged that the court erred in excluding both the conditions contained in the ticket sold and the statement filed with the Interstate Commerce Commission. Appellant contends that the conditions contained in the ticket in effect amounted to an agreed statement of the value of the baggage, for which, in case of loss, it should be liable, and hence this case comes squarely within the doctrine laid down by the Interstate Commerce Commission as contained in subdivision "b" of the statement which we have hereinbefore set forth. In support of this contention counsel cite the case of *Gardiner v. New York C. & H. R. R. Co.,* 139 App. Div. 17, 123 N. Y. Supp. 865, where, by a divided court (three to two), appellant's contention was in effect sustained. That case was certified up to the New York Court of Appeals, where the judgment of the lower court, by a divided court (four to three), was affirmed. (201 N. Y. 387, 94 N. E. 876, 34 L. R. A. (N. S.) 826, Ann. Cas. 1912B, 281.) The conditions in the ticket involved in that case were very similar to the conditions contained in the ticket in the case at bar, and it was also made to appear that the carrier in that case had complied with all the provisions of the laws of New York with respect to filing rates, charges, and regulations governing the carriage of passengers and baggage in that state. The majority of the Court of Appeals in arriving at their conclusion seemed to lay considerable stress upon certain provisions contained in the "public service commissions law" in force in the state of New York, which, it is

stated, the passenger in that case was bound by, and which, as quoted in the opinion, are as follows:

"Every common carrier and railroad corporation shall be liable for loss, damage and injury to property carried as baggage up to the full value and regardless of the character thereof, but the value in excess of one hundred and fifty dollars shall be stated upon delivery to the carrier;"

And, further,

"that nothing in this act shall prevent the issuance of mileage . . . or commutation passenger tickets, . . . with special privileges as to the amount of free baggage that may be carried under mileage tickets of one thousand miles or more."

The ticket in that case was a commutation ticket, and it was held came within the statutory provision quoted above. The only difference, therefore, between the New York case referred to and the case at bar is that in that case the ticket was limited to an intrastate passage, and was governed by the special statutory provisions to which reference has been made. The majority of the Court of Appeals held that, in view that under the law in force in New York, a common carrier by express agreement with the passenger may limit its liability even as against ordinary negligence, as the conditions in the ticket there in question limited the carrier's liability to fifty dollars in case of loss of baggage, the conditions stated in the ticket, when viewed in the light of the statute, amounted to an express agreement between the passenger and carrier that, in case of loss, the carrier's liability should not exceed the amount stated in the ticket. The minority of the court, however, did not concur in this conclusion, but contended that, while the conditions in the ticket were good as a limitation of the carrier's common-law liability as an insurer, they nevertheless did not amount to an express agreement which was necessary to exempt the carrier from liability over the amount mentioned for its own negligence or for acts not beyond its control either as a bailee or as a common carrier. In our judgment the rea-

soning and conclusions of Mr. Justice Vann, who speaks for the minority, are clearly sound, and are sustained by the courts of Massachusetts and Oregon in *Hooker v. Boston & M. R. R.,* 209 Mass. 598, 95 N. E. 945, Ann. Cas. 1912B, 669, and *Wells v. Great Northern R. Co.,* 59 Or. 165, 114 Pac. 92, 116 Pac. 1073, 34 L. R. A. (N. S.) 818, 825.

Appellant, among other cases, has referred us to the case of *Railroad v. Fraloff,* 100 U. S. 24, 25 L. Ed. 531, where it is held that common carriers by proper notice to their passengers may fix a limit respecting their liability for loss of baggage. The court there, in speaking upon this subject, said:

"It is undoubtedly competent for carriers of passengers, by specific regulations, distinctly brought to the knowledge of the passenger, which are reasonable in their character and not inconsistent with any statute or their duties to the public, to protect themselves against liability *as insurers* for baggage exceeding a fixed amount in value, except upon additional compensation, proportioned to the risk." (Italics ours.)

We remark that it might be perfectly proper for common carriers to refuse to carry any amount of baggage free. This is, however far from saying that common carriers by merely adopting regulations which are brought to the passenger's notice by a statement contained in the ticket sold to him may also limit their liability for loss of baggage which is occasioned through the carrier's fault or want of ordinary care. No doubt the Supreme Court of the United States, in common with many other courts, has held that a common carrier may by express agreement with the passenger when fairly entered into under certain circumstances limit its liability even as against its own ordinary negligence. In order to do so, however, the carrier and passenger must agree upon the limitation, and it must be understood that the limitation applies to the negligent acts of the carrier. Not all courts, however, go to the extent of permitting the carrier to contract against its own negligence, and no court, so far as we know, permits this as against gross negligence.

This court is committed to the doctrine that a common carrier may limit its common law liability for loss of property as an insurer. (*Benson v. O. S. L. R. Co.*, 35 Utah, 241, 99 Pac. 1072, 136 Am. St. Rep. 1052, 19 Ann. Cas. 803; *Larson v. O. S. L. R. Co.*, 38 Utah, 130, 110 Pac. 983.) We have not as yet, however, held that a common carrier may also do so against its own negligence. The proposition is not involved in this case, and therefore we do not decide whether a common carrier may not under certain circumstances by an express or necessarily implied agreement, when freely and fairly made, limit its liability for loss of property, even though such loss be occasioned through the ordinary negligence of the carrier or through acts over which it has control.

What we now hold is that the conditions contained in the ticket purchased by respondent and the filing of the rules and regulations governing the transportation of passengers with their baggage with the Interstate Commerce Commission do not amount to an agreement such as will prevent the passenger from recovering the full value of his baggage when lost through the negligence of the carrier, or through acts over which it has control. Nor is there anything to the contrary held by this court in *Bingham v. San Pedro, L. A. & S. L. R. Co.*, 39 Utah, 400, 117 Pac. 606.

Moreover, we are of the opinion that the conditions contained in the ticket in question and the rules and regulations filed with the Interstate Commerce Commission concerning the free transportation of baggage when fairly construed were not intended to and did not amount to more than a limitation of appellant's common law liability as an insurer of the safety of the property intrusted to it as a common carrier.

If we are right in our conclusions so far, then the court could have committed no prejudicial error in refusing to admit in evidence the conditions contained in the ticket in question and in excluding the rules and regulations governing

42 Utah 3

the carriage of baggage which were filed with the Interstate Commerce Commission by appellant. In any event, the effect to be given to those matters was entirely for the court, and, although they had been expressly admitted in evidence, the result, so far as it affected appellant's liability, would still have been the same as matter of law.

What has been said also disposes of appellant's contention that the court erred in refusing to charge the jury as requested by it in the request we have set forth.

It is further strenuously insisted by appellant's counsel that, inasmuch as the district court permitted the jury to find the value of the lost baggage in excess of the limit mentioned in the ticket purchased by respondent, it in effect permitted her to assail the reasonableness of the rules and regulations affecting interstate commerce. In this connection counsel assert that, where the reasonableness of an interstate tariff, rate, rule, or regulation is assailed, the Interstate Commerce Commission has exclusive jurisdiction, and the courts are powerless to pass upon the legality of the claim or to enforce the same until that Commission has passed upon it and authorized its enforcement. Appellant cites *Robinson v. B. & O. Ry. Co.*, 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288, and cases there cited as sustaining this contention. (See, also, *Latta v. Chicago, St. P., M. & O. Ry.*, 172 Fed. 850, 97 C. C. A. 198, and *Galveston, H. & S. A. Ry. Co. v. F. A. Piper Co.*, 52 Tex. Civ. App. 568, 115 S. W. 107.)

There can be no doubt that where the aggrieved party seeks to recover back money which it is claimed he was required to pay in excess of some established interstate rate, or where he seeks to recover damages for discriminations practiced against him, or whenever he attacks the reasonableness of a rate, rule, charge, or privilege governing interstate commerce, he is required to present his claim to the Interstate Commerce Commission for examination and adjustment before he can bring an action in the courts. Such is clearly the effect of the holdings in the cases cited above.

But respondent in the case at bar does not assail the reasonableness of any interstate rate, charge, or regulation; nor does she complain that appellant has violated any matter or thing contained in the Interstate Commerce Act. Indeed, she is quite content with the rates, rules, and regulations appellant has filed with the Interstate Commerce Commission in so far as those rates, rules, and regulations limit its liability as an insurer of the safety of property intrusted to its care as a common carrier. Respondent insists that she is merely seeking redress in a common law court for the loss of her property which was lost through and because of appellant's negligence—that is, through its failure to discharge a duty imposed upon it by the common law—and hence her case falls within the doctrine announced in *Pennsylvania Ry. Co. v. Hughes,* 191 U. S. 488-491, 24 Sup. Ct. 132, 48 L. Ed. 268; *Hooker v. Boston & M. R. Co., supra;* and *Wells v. Great Northern R. Co., supra.* See, also, *Latta v. Chicago, St. P., M. & O. Ry.* and *Galveston, H. & S. A. Ry. Co. v. F. A. Piper Co., supra,* where the doctrine is likewise discussed. Appellant's counsel contend, however, that neither of the cases last above cited are precedents controlling the case at bar because they either did not consider the last amendment of section 6 of the Interstate Commerce Act (Fed. St. Ann. Supp. 1909, p. 260) upon which counsel rely, or that they were decided before said amendment was adopted. It is true that the particular amendment of section 6 of the Interstate Commerce Act was not discussed in the cases decided, since that amendment was adopted and that the earlier cases referred to were decided before the amendment was adopted. But in our opinion this in no way prevents those decisions from being precedents if they can otherwise be considered as authoritative. It is also true that the cases from Massachusetts and Oregon may not be authoritative in so far as federal questions were involved. They, however, are precedents for the purposes for which we have cited them, namely, that the conditions in the ticket did not amount to an express agreement limiting liability for tort. However, the case

referred to in 191 U. S., although decided before section 6 of the Interstate Commerce Act was amended as it now exists, is in our judgment, nevertheless, an authority. We say this because in our opinion the amendment of section 6 aforesaid could have had no influence upon the decision in the latter case, and can have none on the case at bar. Nothing that is said in the amendment relied on by appellant in any way affects the right of respondent to maintain her action for any damage to or loss of property which was occasioned by appellant's negligence. In our judgment the mere fact that respondent's baggage was transported free and in pursuance of the terms of a certain railroad ticket under the terms of which respondent was also entitled to be transported does not prevent her from bringing and sustaining a common law action in the state courts for redress of an injury which she sustained to either her person or property through the negligent acts of appellant, which acts merely amounted to a violation of a duty imposed by the common law, and not of a duty imposed by the Interstate Commerce Act. It might as well be contended that, in case respondent had sustained personal injuries in a collision or other railroad accident and her baggage destroyed, she must first present her claim for damages to the Interstate Commerce Commission for adjustment. This action no more involves the reasonableness of an interstate rate, charge, or regulation than would an action which arose out of a collision or other accident which was due to appellant's negligence, and where the damages sued for arose upon an interstate trip.

Counsel, however, insist that respondent could not have entered into a contract with appellant when she purchased the ticket in question by the terms of which she might carry $500 worth of baggage, and that in case of loss appellant would be liable for that sum. Let us assume, for the purposes of this decision, that such a contract, if entered into, would not have been enforceable because it was one in which a preference was granted to a particular passenger. Respondent's case, however, does not come within the princi-

ples involved in such a contract. She received no more in purchasing the ticket than any other passenger riding on the same train received. Nor did she, in obtaining judgment in this case, receive more than any other passenger was entitled to under the same circumstances. Moreover, if appellant had agreed to pay respondent the actual value of her baggage in case the same was lost or destroyed through its negligence, it would have done no more than the law required of it, and no more than any other passenger was entitled to. Such an agreement, therefore, would have been in entire harmony with, and not contrary to, the law. An agreement, therefore, between a carrier and passenger, which merely requires the carrier to compensate the passenger to the same extent that the law requires such compensation to be made in case of injury or loss, is, to say the least, harmless. Counsel's illustration, therefore, is without force or effect in this case.

We are also of the opinion that there is nothing in the Interstate Commerce Act which in any way prevents the bringing of actions like the one at bar. This, we think, is indicated by what is said in section 22 of the original act, which section has never been amended or changed. It is there said:

"Nothing in this act contained shall in any way prejudice or alter the remedies now existing at the common law or by statute."

There may be very good reasons why a claim attacking the reasonableness of rates, charges, and regulations affecting interstate commerce should be presented to and passed on by the Interstate Commerce Commission which is a special tribunal created for that purpose, but there is no reason whatever why an ordinary action of tort, although affecting interstate commerce, should not be commenced and tried in a court of general common law jurisdiction. In our opinion the Interstate Commerce Act as amended does not so provide; nor has any federal court, so far as we are aware, so held. We concede that in view that appellant bases its claim upon a federal statute, which claim

has been denied by the state courts, the question may ultimately be determined by the federal tribunals, and whenever the federal courts have spoken we shall cheerfully conform our rulings to their mandates, but until they have spoken we must follow the law as in our judgment it should be construed and applied.

Since writing the foregoing our attention has been called to the case of *Galveston, H. & S. A. Ry. Co. v. Wallace,* 223 U. S. 481, 32 Sup. Ct. 205, 56 L. Ed. 516. While in that case section 6 of the Interstate Commerce Act as amended in 1906 is not in terms mentioned, yet the amendment of 1906 is specifically referred to. In our judgment what is said by the court on pages 489, 490 of 223 U. S., page 206 of 32 Sup. Ct. (56 L. Ed. 516), with respect to the right of maintaining an action for the recovery of damages for the loss of property lost on an interstate shipment in the state courts is decisive of the question that an action like the one in the case at bar may be prosecuted in the state courts. (See, also, *St. Louis, etc., Ry. Co. v. Heyser,* 95 Ark. 412, 130 S. W. 562, Ann. Cas. 1912A, 610.) Upon the question that the court did not err in excluding the proffered evidence, see *Atchison, T. & S. F. Ry. Co. v. Rodgers,* 16 N. M. 120, 113 Pac. 805.

It is further insisted by appellant that the court erred in not submitting the question of its negligence to the jury. Upon this question counsel in their brief say:

"Who can tell what they (the jury) might have found? It might have been contended with much force and reason that if the defendant (appellant) provided a suitable building, a suitable room, properly policed the baggage and property placed therein, and otherwise adopted regulations ordinarily suitable and effectual to protect property therein contained against theft, that it was not negligent in the case of this trunk, and that its theft was not due to any lack of care. And the jury might very properly have found upon the facts in this case and upon proper instructions that the theft was not due to any negligence."

We have already called attention that the facts were either conceded or not disputed. Those relating to the manner in which respondent's baggage was lost were all agreed to. We have also set forth the acts of negligence relied on in the complaint. It will thus be seen that many of the elements to which counsel refer in the excerpt quoted were entirely immaterial because not relied on in the complaint as acts of negligence. It is elementary that a party is bound by the acts of negligence he has pleaded. The only acts of negligence pleaded were that appellant through its agent voluntarily permitted a stranger to have access to respondent's trunk, and in that way afforded him an opportunity to remove the check therefrom, and to place his check thereon, and in that way obtain her check, and with it claim her trunk which appellant thereafter wrongfully delivered to him. The negligence, therefore, consisted in permitting a stranger to have access to respondent's trunk and after giving him such access in failing to exercise any watchfulness over him, and thus permitting him to remove and take respondent's check, and afterwards, without the exercise of any care whatever with respect to determining the ownership of the trunk, deliver it to another. The facts all being conceded and no conflicting inferences being permissible from the conceded facts, the question of whether appellant was guilty of negligence or not was one of law merely. Can it be said that reasonable men could disagree or arrive at different conclusions with respect to whether the acts imputable to appellant through which a stranger was given possession of respondent's trunk were negligent or not? We think not. Nor in our judgment did the court or counsel think so at the time of the trial. We have set forth the charge of the court wherein it told the jury that in view of the conceded facts appellant as matter of law was liable for the actual value of the articles lost by appellant. This was a binding instruction fixing appellant's liability. No exception was taken thereto, and all that appellant excepted to in any way was that the court did not limit its liability to the sum mentioned in the ticket. Appellant's ex-

ception was, however, made in the form of a request to charge, which request we have also set forth herein. Appellant, therefore, was apparently content with the law as laid down by the court in the general charge referred to, with the exception that its liability was not limited to the sum of $100. We are of the opinion, therefore, that the appellant was not prejudiced because the question of negligence was not submitted to the jury.

Appellant's assignments of error are all grouped and argued under one head. In what has been said above we think that we have covered all of the material points raised in the assignments.

The judgment is therefore affirmed, with costs to respondent.

McCARTY and STRAUP, JJ., concur.