The Terre Haute and Logansport Railroad Company *v.* Sherwood *et al.*

Filed June 17, 1892.

———————◆———————

No. 15,478.

THE TERRE HAUTE AND LOGANSPORT RAILROAD COMPANY *v.* SHERWOOD ET AL.

COMMON CARRIER.—*Transportation of Live Stock.—Owner Accompanying.— Liability of Carrier.*—Where the property which a railroad company agreed to carry was live stock, and the owner undertook, by special contract entered into with the company, to go with the stock and care for it, he is bound to show that the injury or loss for which he is seeking to recover damages was not attributable to the failure to perform or the negligent or improper performance'of acts which he undertook to perform. He must show that the injury was caused by the carrier's breach of duty.

SAME.—*Special Contract Exempting Carrier from Certain Perils.—Rule as to Recovery.—Burden of Proof.*—Although a carrier can not contract for exemption from his own fraud or negligence, he may limit his liability by special contract, and there can be no recovery where the loss is caused by one of the perils from which the contract exempts the carrier. The burden of establishing the exemption is, however, upon the company.

PLEADING.—*Several Demurrer.*——A demurrer in the following language: "Come now the defendants and demurr severally to each paragraph ·of the complaint as amended, because the same does not state facts sufficient to constitute a cause of action against defendants," must be regarded as a several demurrer addressed to each paragraph of the complaint.

PRACTICE.—*Demurrer.— Overruling of to Bad Paragraph of Complaint.*— Where a demurrer is erroneously overruled to a bad paragraph of a complaint, and it is not affirmatively shown by the record that the judgment rests on the good paragraphs, a reversal must be adjudged.

| 132 | 129 |
| 152 | 340 |
| 132 | 129 |
| 162 | 413 |
| 162 | 414 |
| 132 | 129 |
| 165 | 367 |
| 132 | 129 |
| 171 | 477 |

The Terre Haute and Logansport Railroad Company *v.* Sherwood *et al.*

CONTRACT.—*Special.*—*Breach of.*—*Pleading.*—Where a plaintiff declares upon a special contract, he must state facts showing an actionable breach of that contract, and he can not recover upon any contract except that upon which he specially declares.

From the Marshall Circuit Court.

*J. G. Williams, H. Corbin* and *C. Kellison,* for appellant.

*O. M. Packard, C. P. Drummond* and *A. C. Capron,* for appellees.

ELLIOTT, C. J.—The demurrer of the appellant is clumsily drawn, and it is difficult to determine whether it shall be treated as addressed to the entire complaint or as addressed distributively to each paragraph of that pleading. It reads thus:   " Come now the defendants and demur severally to each paragraph of the complaint as amended, because the same does not state facts sufficient to constitute a cause of action against defendants."   We regard the demurrer as a several one addressed to each paragraph of the complaint.   The demurrer employs the term "severally," as directed against each paragraph, and the words "the same" must be regarded as referring to each paragraph, and not to the entire complaint.   Our conclusion is supported by the cases of *Silvers* v. *Junction R. R. Co.,* 43 Ind. 435; *Stribling* v. *Brougher,* 79 Ind. 328; *Mitchell* v. *Stinson,* 80 Ind. 324; *Clodfelter* v. *Hulett,* 92 Ind. 426; *Indiana, etc., R. W. Co.* v. *Dailey,* 110 Ind. 75.   The language employed in the demurrer before us is different from that used in *Baker* v. *Groves,* 1 Ind. App. 522, and the cases are, therefore, to be discriminated.   The case referred to goes quite as far as the authorities warrant, and we are not willing to extend its doctrine.

The first paragraph of the complaint contains these allegations:   That the plaintiffs are partners; that as such they made a contract with the defendant, a common carrier, to transport eighty horses from East St. Louis, Illinois, to Plymouth, Indiana; that the plaintiffs delivered the horses to the defendant and paid the freight thereon as fixed by the

The Terre Haute and Logansport Railroad Company *v.* Sherwood *et al.*

contract; that the defendant " undertook to carry safely and securely for the plaintiffs;" that " the defendant did not carry and deliver the horses, but failed to do so, whereby they were wholly lost to the plaintiffs." The contracts under which the horses were shipped, three in number, were made part of the paragraph by reference, and appear in the record as exhibits. The contracts incorporated in the pleading are the same, except as to dates, numbers and amounts, so that it is only necessary to copy the material parts of one of the three instruments. The parts deemed material by us read as follows: " Whereas, the Terre Haute and Indianapolis Railroad Company transport live stock only at first-class rates, as *per* their merchandise tariff, unless said company be released from all claims for damages resulting from the causes hereinafter specified. Now, for the purpose of obtaining transportation of the live stock hereinafter mentioned at the reduced rate granted by said company in consideration of being so released, this agreement made between said company, party of the first part, and Sherwood and Swoverland, parties of the second part, witnesseth, that, in consideration of being released from liability, as hereinafter specified, the said company agrees to transport one car load of horses from East St. Louis to Terre Haute, and forward the same from the last named station to Plymouth, Ind., *via* the T. H. L. Railroad, and agrees that the through rate to Plymouth shall not exceed fifty-two dollars per car and advanced charges; and further agrees to furnish free passage for one person entrusted by said party of the second part with the control of said animals while in transit. And it is expressly agreed, that the said company shall not be liable for any damages which may occur while said animals are being loaded or unloaded, or which may result from their being wild, vicious, unruly or weak, or their escaping or dying, or from their injuring or killing themselves or each other; or from heat, suffocation or improper loadings, or securing in the car or cars, or from said animals being

crowded, or from the burning of hay or other material; nor shall the company be liable for delay in transportation, nor for any loss or damage of any kind after delivery at the station from which the company has agreed to forward said animals. The party of the second part agrees to send with said stock one or more men, as may be necessary to care for said stock while in transit, and to load, unload, feed and water said animals at his own risk and expense, the said company furnishing the necessary labor to assist (while in transit over its lines), under the direction and control of the person, put in charge thereof by the party of the second part."

The familiar rule is that each paragraph of a complaint must be good in itself, and must proceed upon a definite theory. *Montgomery* v. *Craig*, 128 Ind. 48, and cases cited; *Mescall* v. *Tully*, 91 Ind. 96.

The theory upon which the paragraph · of the complaint under immediate mention proceeds is that the appellant is liable to the appellees in damages for a breach of a special contract. There are no allegations indicating that the pleader assumed to state a cause of action in tort; on the contrary, all of the allegations indicate that the pleader assumed to state a cause of action upon the special contracts incorporated in the pleading. The pleading is based solely upon the special contracts, and not upon any general or implied agreement or undertaking. The question, therefore, is this: Does the first paragraph state facts constituting a cause of action for a breach of the special contracts?

We suppose it entirely clear that where a plaintiff declares upon a special contract he must state facts showing an actionable breach of that contract, and that he can not recover upon any contract except that upon which he specially declares. *Lake Shore, etc., R. W. Co.* v. *Bennett,* 89 Ind. 457; *Hall* v. *Pennsylvania Co.,* 90 Ind. 459; *Fry* v. *Louisville, etc., R. W. Co.,* 103 Ind. 265; *Indianapolis, etc., R. R. Co.* v. *Remmy,* 13 Ind. 518. It is, as is well known, a settled rule of pleading that the complaint must state a complete cause

of action. It is true, as appellant's counsel assert, that a complaint must affirmatively show that the defendant is in culpable default. *Lime City, etc., Ass'n* v. *Wagner,* 122 Ind. 78. These rules would determine the question as to the sufficiency of the pleading against the appellees if it could be assumed that it was essential to the existence of a cause of action for them to aver that the failure to transport was not attributable to some one of the causes or perils from which the carrier is released by the special contract. But this can not be always assumed, even where there is a special contract limiting liability. While there is a stiff contest among the authorities as to the burden of proof in such cases, we incline to the opinion that the true rule is, where the articles carried are not live stock, and there is no agreement that the owner's agent shall have charge of the property, the burden is upon the carrier to show that the injury or loss to the shipper was attributable to one of the causes or perils against which the special contract secures immunity.

The text-writers generally declare this doctrine. One of them says : " The shipper in the first instance makes out his case by proving his contract and the non-delivery of the goods. The burden of proof is then on the carrier to bring himself within the exemption clauses of the bill of lading, or, in other words, to show that the loss happened by one of the excepted perils. The reason is obvious. The goods were in his custody, and he is bound like all other bailees to account for their loss, if they are lost. The rule is the same where the goods are delivered in a damaged condition. The carrier must show that the damage was caused by one of the excepted causes or perils." Wheeler Carriers, 252. Another author says : " The burden of proving that a loss which has occurred falls within the exemptions provided for by the contract rests ordinarily upon the carrier. But where the loss occurs from such a cause that the law will not presume negligence, or where the loss happens from an excepted cause, as from fire, the burden of proving the car-

rier's negligence is, by the weight of authority, upon the plaintiff." Hutchinson Carriers (2d ed.), sections 259a, 736. The rule that the burden is ordinarily on the carrier is supported by principle, and is a just and salutary one. The special contract, although it may release the carrier from some obligations and duties, does not take from him his character as a common carrier. As said by the court in *Witting* v. *St. Louis, etc., R. R. Co.*, 28 Mo. App. 103 : "Though the goods may be carried under a special contract, relieving him from the liability of an insurer, still he is none the less a common carrier." In *Railroad Co.* v. *Lockwood*, 17 Wall. 357 (376), the court said : "But when a carrier has a regularly established business for carrying all or certain articles, and especially if that carrier be a corporation for the purpose of a carrying trade, and the carriage of the articles is embraced within the scope of its chartered powers, it is a common carrier, and a special contract about its responsibility does not divest it of the character." As the special contract does not take away the character of a common carrier, there remains, notwithstanding the express stipulations of the contract, certain obligations imposed by the law of the land, and these enter into the contract as silent factors. *Long* v. *Straus*, 107 Ind. 94. These obligations, although implied, are essential parts of the contract, and among them is the obligation to carry safely, so far as care and diligence will enable the carrier to do. When this obligation is violated, there is, in ordinary cases and with respect to inanimate property, *prima facie* an actionable breach of the contract. In cases where the carrier has full custody of the property there is, *prima facie*, at least, actionable breach of the contract when the failure to safely carry is shown, because, as said in the case of *Inman* v. *South Carolina R. W. Co.*, 129 U. S. 128 (139), "in case of loss the presumption is against the carrier."

The common law has been relaxed so as to permit a common carrier to limit his liability, but this change in the law does not go to the extent of allowing a carrier to contract

for a complete exemption from liability, nor does it go to the extent of changing the rule that when the failure to carry is affirmatively shown, the burden of showing exemption from the duties and obligations imposed by law rests upon the carrier. The rule that the presumption is against the carrier, in cases where he has full charge and custody of the property, is in harmony with the doctrine sustained by a long line of cases, a line beginning far back in the early years of the common law and continuing unbroken to the present, that where injury to a passenger is shown the presumption is that the carrier was in fault. The rule that the burden is on the carrier, who has the exclusive custody of the property, is a reasonable one, inasmuch as it is but just to require the carrier who has the property in complete custody, who knows and controls the men, who manages the instrumentalities of transportation, and who has the means of explanation at hand, to show what caused the loss or injury, rather than to cast that burden upon the shipper, whose means of information are comparatively meager, and whose power of securing knowledge of the fact is circumscribed within very narrow limits. The question we have in hand was thoroughly discussed in the case of *Hull* v. *Chicago, etc., R. W. Co.*, 41 Minn. 510 (16 Am. St. R. 722); and in the course of the opinion it was said, in speaking of a carrier: " Ordinarily, one who delivers to him goods parts entirely with his possession and control over them, and knows nothing of what takes place during the carriage, while the carrier has possession and control over them, and is supposed to know, or have the means of knowing, what happens to them, and if they are lost or injured, how it occurred. The common law recognized the danger of collusion, connivance, and fraud between the carrier and his servants or others, which might leave the owner practically at the mercy of the carrier if he was required to prove negligence or fraud. To make such proof he would ordinarily have to call the very men whose recklessness or frailty caused the injury. To prevent

this, the law excused the carrier only upon his proving that the loss or damage occurred from the act of God or public enemy—causes for which he could not be supposed to be responsible. The reasons which require the carrier to excuse himself for his failure apply with as much force to a case of limited as to a case of full common law liability."

The question whether the rule to which we have referred applies to a case such as this remains for consideration. This case is, it is evident, not the ordinary one where the carrier has exclusive custody of inanimate property. Here we have a special contract made by the shipper and the carrier for the transportation of live stock at reduced rates of freight, and wherein it is provided that the latter shall be absolved from liability for designated perils, and that the former "shall send with said stock one or more men, as may be necessary, to care for said stock while in transit, to load, unload, feed and water said animals, at their own risk and expense." The agreement of the owners to take charge of the animals exerts an important influence upon the case. The effect of this agreement is to place the animals in their immediate custody during transportation. Their agent is to care for them, and is to do the things expressly specified. The animals were not, therefore, in the exclusive custody and control of the carrier, so that the case is not within the reason of the rule that the carrier, and not the shipper, has the burden of proof, because the former has all the means of explanation and excuse at hand. Here the shippers, better than the carrier, can explain many things, and these things they do not undertake to explain, nor do they undertake to show that the loss was not attributable to a failure to perform acts they themselves agreed to perform. They agree that they will care for the animals, feed and water them, load and unload them, and they also agree that this shall be done at their own risk and expense. It seems clear, upon principle, that the owners are bound to aver and prove that the loss was not attributable to a failure to perform their

part of the contract, or to negligence in performing the acts which they expressly undertook to perform. As to important things they were the actors, and they were in a position to know what was done or left undone, and they can not recover of the carrier without showing that the loss was not attributable to a breach of duty or violation of contract on their part, for they assumed duties as explicitly and fully as did the carrier.

In order to make a complete cause of action, they must show that the breach or wrong which caused the injury was that of the carrier, and not their own. It may be true, as averred, that the appellants did not carry and deliver the horses, and yet not true that it is liable, for it may be that the fault was that of the shippers. The courts can not assume in such a case as this, where there is a divided custody and dependent duties, that the defendant is liable because the horses were not safely transported and delivered. It may as well be assumed that the fault was that of the plaintiff as that it was the fault of the defendant, for there are here mutual agreements, mutual duties, and the shipper was placed in charge of the property. In view of the nature of the property to be carried, and of the express undertaking of the shippers to care for it while in transportation, we adjudge that it was incumbent upon the plaintiffs to show by the statement of appropriate facts that the loss was not attributable to a breach of the contract stipulations on their part. This they may easily do, if they have a cause of action, by showing what caused the injury to the horses or what was the cause of the failure to safely transport. Many of the cases apply the rule indicated to cases of inanimate property, but it is not necessary in this instance to go that far, and so we here go no further than to hold the rule applicable to cases of the shipment of live stock under a special contract wherein the owner undertakes to go with the stock and care for it while in transportation.

Our conclusion that where the property to be carried is

live stock and the owner undertakes to go with and care for it he is bound to show that the injury or loss was not attributable to the failure to perform or the negligent or improper performance of acts which he undertook to perform, is required by authority. In the case of *St. Louis, etc., R. W. Co.* v. *Weakly*, 57 Ark. 397 (7 Am. S. R. 104, 117), the question received full consideration, and the court said: " Under the contract, they (the shippers) took charge of the stock during transportation, and relieved appellant of any responsibility for the discharge of the duties of a common carrier which they undertook to perform, and confined its duties, by the Memphis contract, to the furnishing suitable cars and hauling them to the place of destination. Having the care of the stock, the liabilities of a common carrier, which made it his duty to account for the loss of freight, did not devolve on appellant. Being in charge, they are presumed to know the cause of the loss of the jack found dead, if either party to the contract does; and the burden of proof is upon them to show that the default or negligence of appellant was the cause before they can be entitled to recover." We regard the case from which we have quoted as correctly deciding the question with which we are immediately concerned, although we are not prepared to yield to it upon some other questions, nor are we quite willing to acquiesce in the doctrine upon the question to which we cite it as broadly as it is stated, for we think the common carrier is always bound to account for a breach of duty not assumed by the shipper or not covered by an effective exonerating stipulation of the contract between the parties. It is true, as declared by the court in the case cited, that the carrier is not responsible for the failure to perform duties assumed by the shipper, and it necessarily follows from this that to the extent that the shipper takes duties upon himself to that extent they cease to be the duties of the carrier, and as they cease to be the duties of the carrier there can be no liability on his part for a breach or a failure to perform. A terse statement of what we regard as the cor-

rect rule is given by the court in *McBeath* v. *Wabash, etc.,* *R. R. Co.*, 20 Mo. App. 445, and it is this: " Ordinarily the *onus* is on the defendant to account for the stock, but in case of special contract, whereby the owner agrees to and does take charge of the stock, the burden of proving negligence is upon the plaintiff." It is, of course, true that the plaintiff may recover where there is a breach of the special contract by the carrier as well as where there is negligence, but this does not affect the principle stated in the case from which we have quoted, for if the duty, whether created by contract or imposed by law, which is violated is that of the plaintiff, there can be no recovery, so that there can be no complete cause of action unless it appears that the plaintiff in charge of the property was himself free from fault or wrong. This may be made to appear by showing the cause of the failure to carry, or of the injury, and that the failure or injury arose from a breach of the legal or contract duty resting upon the carrier. The doctrine to which we have given our sanction was thus asserted in *Louisville, etc., R. R. Co.* v. *Hedger*, 9 Bush, 645 : " Where the owner contracts, however, to load and unload his stock, and to take charge of them during transportation, as in this case, and does in fact do so, the burden of proof, where the company is charged with negligence for the loss or injury to the stock, is upon the owner, as the party who has the care of the property is presumed to know how the injury occurred, and must himself suffer the loss unless negligence is shown on the part of the carrier or his employees." The court in the case from which we have just quoted strongly marks what we consider a peculiar and distinctive feature of this class of cases, namely, the custody and care of the stock by the owner under the special contract. This peculiar feature, as we have already impliedly indicated, marks the class as one different from that in which the shipper has not the care of the property, and assumes no special duties concerning it during transportation. It is evident that the rule applied to this class of cases is one of sound

practical justice, since it is but fair and reasonable that the person in immediate charge of live stock should show how it was injured, as no one has, presumably, at least, superior means or opportunities of knowledge. We do not mean that it is necessary for him to show the specific cause of the injury, but we do mean that it is necessary for him to show the cause of the injury with so much detail and clearness as shall make it appear that the injury was caused by a breach of contract or legal duty on the part of the carrier, and not by neglect or failure of himself to do what he bound himself in his special contract to do. Other cases give our conclusion strong support, but we can not prolong this opinion by commenting upon them, and so cite them without comment. *Clark* v. *St. Louis, etc., R. W. Co.*, 64 Mo. 440 (448); *Harvey* v. *Rose*, 26 Ark. 3; *Kansas Pacific R. W. Co.* v. *Reynolds*, 8 Kan. 623 (641). We can not escape the conclusion that principle and authority require that the first paragraph be adjudged to be fatally defective.

The second paragraph of the complaint declares upon the same contracts as those upon which the first paragraph is based, but avers that the injury to the horses was caused by the wrecking and derailing of the train, and that the negligence of the appellant in failing to keep its road and cars in repair, and in managing the train, caused the wreck and resulting injury. This averment makes the paragraph good, inasmuch as it affirmatively shows that the injury was caused by the carrier's breach of duty, and thus excludes the inference that it was attributable to any failure to perform the duties assumed by the appellees. The third paragraph of the complaint avers with greater particularity the cause of the injury, and shows that the fault was that of the appellant, and is sufficient.

The appellant had a right to test the sufficiency of each paragraph of the complaint, and as the first is bad the judgment must be reversed, inasmuch as we can not say from the record proper that the judgment rests entirely upon the good

paragraphs of the pleading. Where a demurrer is erroneously overruled to a bad paragraph of a complaint, and it is not affirmatively shown by the record proper that the judgment rests on the good paragraphs, a reversal must be adjudged. This has long been the settled law of this State. See authorities cited in Elliott App. Proc., sections 638, 666, 669. But if we should depart from this settled rule, it would do the appellees no good, for it is evident that the trial court put the case to the jury upon a radically erroneous theory. In proof of this it is sufficient to quote from the second instruction, given at the appellees' request, this language : "And I now instruct you that if you find from the evidence that the plaintiffs and the defendant did enter into said written contracts, and the three car loads of horses were delivered by plaintiffs to defendant at East St. Louis, and loaded on defendant's cars, to be carried and transported to the city of Plymouth, Indiana, over the lines of railway operated by defendant, and you further believe from the evidence that the defendant failed to deliver all or any of the horses mentioned in said live-stock contracts to the plaintiffs at the city of Plymouth, then in such case your verdict should be for the plaintiffs."

The doctrine thus broadly declared is unsound. It would not be sound even in cases where the special contract does not require the shipper to assume charge of the stock, for it is conclusively settled that a carrier may limit his liability, and that where the liability is limited by special contract, there can be no recovery in cases where the loss is caused by one of the perils from which the contract effectively exempts the carrier. *Michigan, etc., R. R. Co.* v. *Heaton*, 37 Ind. 448 (10 Am. R. 89) ; *Ohio, etc., R. R. Co.* v. *Selby*, 47 Ind. 471 (17 Am. R. 719) ; *St. Louis, etc., R. R. Co.* v. *Smuck*, 49 Ind. 302 ; *Adams Ex. Co.* v. *Fendrick*, 38 Ind. 150 ; *Indianapolis, etc., R. R. Co.* v. *Allen*, 31 Ind. 394 ; *Rosenfeld* v. *Peoria, etc., R. W. Co.*, 103 Ind. 121. There is, indeed, no contrariety of opinion upon the proposition that a special

contract may be made limiting the liability of a carrier, nor is there any conflict upon the proposition that where the loss is caused by one of the perils from which the contract exonerates the carrier there is no liability. While a carrier can not contract for exemption from his own fraud or negligence, he may, by special contract, free himself from many common law liabilities. *Railroad Co.* v. *Lockwood, supva; Kansas, etc., R. R. Co.* v. *Simpson,* 30 Kan. 645 (46 Am. R. 104); *United States, etc., Co.* v. *Backman,* 28 Ohio St. 144; *Black* v. *Goodrich, etc., Co.,* 55 Wis. 319 (42 Am. R. 713); *Moulton* v. *St. Paul, etc., R. R. Co.,* 31 Minn. 85 (47 Am. R. 781); *Bartlett* v. *Pittsburgh, etc., R. W. Co.,* 94 Ind. 281 (288). It is doubtful, under the authorities, whether the instruction would be correct even if there were no special contract, since it is held by many cases that where live stock is carried, it is not enough to show a mere failure to deliver. *Pittsburgh, etc., R. W. Co.* v. *Hollowell,* 65 Ind. 188; *Pittsburgh, etc., R. R. Co.* v. *Hazen,* 84 Ill. 36 (25 Am. R. 422); *Bartlett* v. *Pittsburgh, etc., R. R. Co., supra; The Saragosa,* 3 Woods (C. C.), 380; *Clarke* v. *Rochester, etc., R. R. Co.,* 14 N. Y. 570 (67 Am. Dec. 205); *Michigan, etc., R. R. Co.* v. *McDonough,* 21 Mich. 165. But whatever may be the rule where live stock is carried, and there is no special limiting contract, it is quite clear that where live stock is transported under such a special contract as that referred to in the instructions in this case there is no unrestricted common law liability, and the plaintiff can not recover solely upon evidence of a failure to deliver.

Judgment reversed.

Filed Sept. 13, 1892.