## SHAY v. UNION PACIFIC R. COMPANY.

No. 2714.    Decided July 12, 1915.    Rehearing denied Nov. 30, 1915.
(153 Pac. 31.)

1. PLEADING—AMENDMENT—DISCRETION OF COURT. In a shipper's
action to recover damages for the destruction of a carload of
emigrant movables, including several horses, alleging that
sparks from a helping locomotive, not having a sufficient spark
arrester, fell upon and through the defective car and destroyed
the contents by fire, the allowance of a trial amendment, alleg-
ing that after the discovery of the fire the defendant and its
servants did not use ordinary care in protecting the car, and
negligently opened a door and permitted a wind to fan the
smoldering fire into an uncontrollable flame, when it might,
by ordinary skill, have been put out and have saved the prop-
erty from destruction, was within the trial court's sound dis-
cretion.    (Page 256.)

2. CARRIERS—LOSS OF GOODS—NEGLIGENCE—BURDEN OF PROOF. Such
action was an action for negligence, in which the burden of proof
was on the plaintiff.    (Page 256.)

3. APPEAL AND ERROR—REVIEW—FINDINGS OF JURY—WEIGHT OF
EVIDENCE. Where the evidence in a shipper's action for the
loss of goods by fire negligently started by sparks from the
engine contained some substantial evidence in support of every
element of negligence alleged in the complaint, such negligence
was for the jury, and the Supreme Court was concluded by their
finding and precluded from weighing the evidence or passing
upon the effect that should be given to any particular statement
or kind of evidence produced at the trial.    (Page 256.)

4. CARRIERS—CARRIAGE OF GOODS—RECEIPT—LIMITATION OF LIABIL-
ITY. Stipulations in a bill of lading given under Interstate
Commerce Act Feb. 4, 1887, c. 104, section 20, 24 Stat. 386, as
amended by Act June 29, 1906, c. 3591, section 7, 34 Stat. 593
(U. S. Comp. St. 1913, section 8592), requiring an interstate car-
rier, receiving property for transportation, to issue a receipt or
bill of lading, and making it liable to the holder for any loss
or injury to the property, limiting the value of horses shipped
to $100 each, and the value of goods to ten dollars a hundred-
weight, were binding on the shipper.[1]    (Page 257.)

5. CARRIERS—RECEIPT FOR GOODS—LIMITATION OF LIABILITY—SHIP-
PER'S INSPECTION OF CAR—NEGLIGENCE. Under such provision, a
stipulation in a bill of lading of emigrant movables, including

[1]*Homer v. Railroad*, 42 Utah, 15, 128 Pac. 522.

horses, that the shipper should inspect the cars in which the stock was to be transported and satisfy himself that they were safe and in proper condition, and report to the carrier's agent or employee any visible defect therein and demand necessary repairs before using it, and that the fact of his allowing his stock in the car should be an acceptance of its suitability, and that he thereby assumed all the risk, loss, or damage from any other cause than the willful negligence of the carrier, referred only to such defects as might in some way affect the safety or suitability of the car for transportation purposes, and not to defects which could only become dangerous or operative by reason of some subsequent negligence of the carrier; so that the shipper's unreported notice of a defect in the door of the car and his agent's unreported notice of a defect in the roof, through which sparks from a helper engine, placed too near the car, fell, causing a fire which destroyed its contents, did not charge the shipper with contributory negligence in the selection and use of the car.   (Page 258.)

6.  CARRIERS—INJURY BY SPARKS FROM ENGINE—QUESTION FOR JURY —NEGLIGENCE.  In a shipper's action for damages for the destruction of a carload of emigrant movables, including horses, by fire set by sparks from a helper engine placed nearer the car than the carrier's rule permitted, and where there was evidence for defendant that the engine was equipped with a proper spark arrester, the question of its negligence was nevertheless for the jury.[2]  (Page ....)

7.  CARRIERS—CARRIAGE OF GOODS—EXPLOSIVES—SHIPPER'S VIOLATION OF LAW.  A shipper of a carload of emigrant movables, including horses, whose agent riding in the car to look after the horses, etc., carried a revolver and a shotgun, and placed some cartridges in the oven of one of the stoves, together with some loaded shells for the shotgun, did not thereby violate the law prohibiting the shipment of explosives and other dangerous articles, so as to defeat the shipper's recovery for a destruction of the goods by fire started by sparks from defendant's locomotive.   (Page 264.)

Appeal from District Court, Second District, Hon. *N. J. Harris*, Judge.

Action by A. M. Shay against the Union Pacific Railroad Company.

[2]*Christensen* v. *Railroad Co.*, 35 Utah, 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159; *Richards* v. *Railroad Co.*, 41 Utah, 99, 123 Pac. 933.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*P. L. Williams, Geo. H. Smith, H. B. Thompson* and *C. R. Hillingsworth* for appellant.

*D. E. Rathbun* and *David Jensen* for respondent.

FRICK, J.

This was an action to recover damages from the Union Pacific Railroad Company for the destruction of a carload of what are called "emigrant movables," including four horses, while in transit on the railroad of said company from Eaton station, Colo., to Idaho Falls, Idaho. The whole history of the shipment is, with much particularity, set forth in the complaint. It is, however, only deemed necessary to refer to the acts of negligence complained of, which are alleged as follows:

"That at the said grade in Wyoming the defendant, by its agents and employees connected a second or helping engine in said train for the purpose of assisting in drawing said train up and over what is there known as the 'Sherman Hill'; that said defendant carelessly and negligently coupled the said second or helping engine closely in front of said car in which plaintiff's goods were loaded; that the said car in which plaintiff's goods were located was a defective car, having holes in the roof and in the sides thereof, and that said defendant carelessly and negligently used said defective car in transporting and carrying plaintiff's aforesaid property; that the said second or helping engine was defective and not properly equipped with sufficient spark arresters, and did at that time emit many sparks, which fell in and upon the said car in which plaintiff's goods were being carried, and did then and there, being on or about the 11th day of February, 1913, in Albany county, state of Wyoming, on the said 'Sherman Hill,' set fire to the contents of the said car; *  *  * that *after the discovery of said fire the defendant, its servants and employees, did not use ordinary care in protecting*

*said car of goods, and carelessly and negligently, after the*
*discovery by them of a smoldering fire in said car, opened the*
*windward door and permitted a strong wind, then blowing,*
*to blow through said open door, into and upon said smolder-*
*ing fire, thereby fanning it into an uncontrollable fire, and*
*that said fire at the time it was so discovered by them could*
*have, by ordinary skill, been controlled, quenched, and put*
*out, and thereby saved plaintiff's said property from destruc-*
*tion,* and that said fire consumed and destroyed the entire
contents of said car, to the damage to this plaintiff of the total
sum as above stated in itemized amounts aggregating the total
sum of $3,643; that said fire was caused by defendant in care-
lessly and negligently operating the train by placing said de-
fective engine so near said car and in using said defective car,
thereby throwing fire in and upon said car.''

The italicized part set forth above was an amendment al-
lowed by the court during the trial and to which we shall re-
fer again hereafter.

The defendant answered the complaint, admitting that it
received the chattels described therein for transportation
from Eaton, Colo., to Idaho Falls, Idaho, admitted that said
chattels were destroyed by fire in the state of Wyoming while
in transit, and admitted that said chattels weighed not to ex-
ceed "13,300 pounds." It denied all other allegations of the
complaint, and pleaded the provisions of the act of Congress
relating to interstate commerce. It also pleaded the contract
of shipment as contained in the bill of lading wherein the
value of the horses shipped was limited to $100 each, that the
shipper agreed to inspect the car in which said chattels were
shipped and report all defects, and that defendant, under the
provisions of said contract, was liable only for willful or act-
ual negligence, and also pleaded contributory negligence on
the part of the respondent.

Upon a trial to a jury they found the issues in favor of the
plaintiff, awarding him damages in the sum of $1,906, on
which sum they allowed legal interest from the date of the de-
struction of the chattels to the time of trial, amounting to the
sum of $165.18. The court entered judgment for the prin-

cipal and interest, amounting to the sum of $2,071.18, from which the defendant appeals.

A large number of errors are assigned and insisted upon, but we shall notice only such as we deem material, or which, in our judgment, affect the substantial rights of the parties.

The first assignment we shall notice is that the court erred in permitting the respondent to amend his complaint in the particulars we have indicated by the italics. The allowance of the amendment, although irregular as to time, was nevertheless within the sound discretion of the trial court. A careful inspection of the whole proceedings relating to the amendment and evidence adduced in support thereof leads us to the conclusion that the appellant was not prejudiced thereby. Neither have counsel pointed out any particular reason why appellant was prejudiced thereby. Of course, appellant might have been prejudiced by permitting the jury to find it guilty of the negligence therein alleged, when, as a matter of fact, it was not so guilty, but that is a matter which we shall consider hereafter. This assignment, therefore, cannot prevail.

It is next urged that the court erred in refusing to grant appellant's motion for a directed verdict, for the reasons: (1) That the respondent had failed to prove that the loss and damages complained of were caused through the negligence of the appellant; (2) that respondent had failed to prove any negligence on its part; and (3) for the further reason that respondent "was guilty of contributory negligence with reference to the selection and use by his written assent of the car * * * and failure to report to the agent * * * of the carrier that there were not other or visible defects in the car."

In this connection it is insisted that the action is one for negligence, and hence the burden of proof was upon the respondent. That, no doubt, is the law, and the case was submitted to the jury upon that theory.

We cannot, within reasonable limits, set forth the evidence produced upon the trial relating to the negligence, and it must therefore suffice to say that, in our judgment, there is at least some substantial evidence in

support of every element of negligence alleged in the complaint. In view of that, we are precluded from weighing the evidence or from passing upon the effect that should be given to any particular statements or kind of evidence produced at the trial. All those matters were for the jury to pass on, and we are concluded by their finding. The evidence being sufficient to take the case to the jury, the motion to direct a verdict upon the two first grounds was properly denied. We shall hereafter refer to some particular portions of the evidence in connection with the propositions discussed.

It is vigorously contended that under the repeated rulings of the Supreme Court of the United States, and especially as those rulings are reflected in the cases of *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 33 Sup. Ct.    **4** 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, *M. K. & T. Ry.* v. *Harriman*, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, *Boston & Maine R.* v. *Hooker*, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, and in the very recent case of *O. S. L. R. Co.* v. *Homer*, 235 U. S. 693, 35 Sup. Ct. 207, 59 L. Ed. ——, in which that court reversed the case of *Homer* v. *Railroad*, 42 Utah, 15, 128 Pac. 522, the court erred in not granting the motion for the reason we have quoted. This contention is based upon the stipulations contained in the bill of lading which is the receipt or bill of lading provided for in the amendment made in section 20 of the original Interstate Commerce Act and which amendment is specially referred to in the case of *Adams Express Co.* v. *Croninger, supra.* It is there, in substance, held that the shipper is bound by the provisions or stipulations contained in the bill of lading. The provisions or stipulations in the bill of lading issued to respondent in the case at bar, and which are relied on by appellant, are the following:

"It is expressly agreed that the value of live stock to be transported under this contract does not exceed the following mentioned sums, to wit: Horses, $100.00 per head. * * *

"The shipper agrees' to inspect the cars in which said stock

is to be transported * * * and satisfy himself that they
are sufficient and safe and in proper order and condition, and
shall report to the agent or employees of said carrier any visi-
ble defects therein, and demand necessary repairs before pro-
ceeding to occupy said cars, * * * and the fact of his
loading said stock into said cars shall be an acknowledgment
and acceptance by him of the sufficiency and suitability in
every respect of said cars; * * * and he hereby assumes
all risk of * * * loss or damage from any other cause
or thing not resulting from the wilful negligence of the car-
riers, their officers, agents, or employees.

"No carrier shall be liable for any loss or damage to said
stock by * * * fire * * * or any other cause not
directly the result of gross negligence on the part of said
carriers, their agents and servants."

There was a further provision in the bill of lading, namely,
that the chattels in the car with the four horses, as counsel
for appellant puts it, "were shipped under a declared valua-
tion of ten dollars per hundredweight."

The court followed the limitations of value both as to the
horses and the other goods as requested by appellant's coun-
sel, but refused to direct the jury as requested with regard
to the stipulation in the bill of lading referring to the selection
and the defects of the car. While the evidence showed the
actual value of the horses and other articles destroyed in the
car was $3,643, and that the weight of the chattels was at
least 21,060 pounds, which would have amounted to $2,010.60,
according to the rate stipulated in the bill of lading, the jury
nevertheless only allowed respondent $1,906, with interest,
as before stated.

The further question, therefore, is: Did the court err in
not directing the jury to find for appellant upon the third
ground stated in the motion for a directed verdict?
We remark that counsel for appellant also raised the
question in other specific requests to charge, but it is
not necessary to refer to those.

The evidence showed that the car in question was not what
is commonly called a live stock car, but that it was an ordi-
nary closed freight car; that respondent inspected the car at

Eaton, Colo., before loading the goods into it; that, as he testified, the only defect he discovered was that a piece of board was missing or had been broken off at the lower end of one of the car doors; that he placed a board over the opening and placed a range or stove against the board to keep it in place; that he did not report the defect to the appellant's agent at Eaton or to any of its other employees at any time. The evidence further showed that after the car had left Eaton and was being transported by appellant one Gardner was supposed to ride in the car and look after the horses, but that he, without the knowledge or consent of appellant's trainmen, surreptitiously permitted one Snell, a young man, to ride in the car; that after the train in which the car was being transported had reached a certain station in Colorado on the early morning of the day of the fire, Snell says he noticed an opening in the roof of the car about one and one-half inches wide by about five inches long; that in going over Sherman hill in Wyoming there are many curves and steep grades, and for that reason the trainmen attached a second engine to the train, which engine, according to respondent's evidence, was placed within three or four car lengths from the car in question, while, according to appellant's evidence, it was at least nine car lengths from said car; that between three and four o'clock in the afternoon, and just before the fire started, Snell says, while riding in the car, he heard the cinders from the engine strike the roof and sides of the car in large quantities, and that in a short time thereafter he noticed smoke issuing from a point between the piano and one of the ranges in the car; that he could not get at the point where the fire was, and therefore took a bar and pried out the bottom of the car door, and, as the train was moving very slowly up a steep grade, he alighted from the car and got on to the caboose at the rear of the train and informed the trainmen and Mr. Gardner of the fire; that the wind at the time was blowing very hard from the north, and neither Mr. Gardner nor the trainmen were able to put out the fire with the means at their command, and the car, with all its contents, including the four horses, was destroyed. Snell also testified that he was in the car alone, and that he did not smoke;

that there was no fire of any kind in or near the car, except
the fire in the engine and that the fire did not originate from
anything that was in the car. Appellant's counsel contend
that, under the undisputed evidence, it was made to appear·
that the car was defective in at least two particulars, one in
the door, and the other in the roof. The former was testified
to by respondent, Shay, and the latter by Snell. It is claimed
that it was the duty of the respondent to report the defects
he had discovered, and that it was also the duty of Mr. Snell
to report the one he had discovered, and that he, for that pur-
pose, was the agent of respondent. Counsel further contend
that, if the fire originated from the engine at all, it got into
the car by reason of the defects therein as disclosed above,
which defects should have been reported by respondent, and
in failing to do that he cannot recover in this action. It is
contended that to that effect are the decisions referred to in
the cases we have already cited. We have carefully read
and considered the decisions handed down in those cases, and
after doing so we confess our inability to thus construe them.
All that was before the court in the case of *Adams Express
Co.* v. *Croninger, supra,* was whether the limitation stated in
the shipping receipt with respect to the value of the article
shipped where the rate charged was based upon the value
stated in such receipt controlled, or whether the shipper
could recover the actual value of the article lost while in
transit, which was greater than the value stated in the receipt.
In that case negligence of the carrier was not involved. It
was, however, also held in that case, as it has often been held,
that the common carrier cannot exempt himself from liability
for his own negligence. Upon that question, the court, speak-
ing through Mr. Justice Lurton, says:

"That a common carrier cannot exempt himself from liability for
his own negligence or that of his servants is elementary. (Citing
case.) The rule of the common law did not limit his liability to loss
and damage due to his own negligence, or that of his servants. That
rule went beyond this, and he was liable for any loss or damage
which resulted from human agency, or any cause not the act of God
or the public enemy. But the rigor of this liability might be modi-
fied through any fair, reasonable, and just agreement with the ship-
per *which did not include exemption against the negligence of the
carrier or his servants.*" (Italics ours.)

The court then holds that to limit by contract the liability
to the value expressed in the shipping receipt upon which
the transportation or charge was based is not contracting
against liability for negligence. The case of *Kansas City
Southern Ry. Co.* v. *Carl, supra*, is to the same effect, and the
decision in the Croninger Case is approved and followed. In
the Carl Case, in speaking of such a limitation, it is said:

> "Is the contract here involved one for exemption from liability for
> negligence, and therefore forbidden? An agreement to release such
> a carrier for part of a loss due to negligence is no more valid than
> one whereby there is complete exemption. Neither is such a con-
> tract any more valid because it rests upon a consideration than if
> it is without consideration. A declared value by the shipper for the
> purpose of determining the applicable rate, when the rates are based
> upon valuation, is not an exemption from any part of its statutory or
> common-law liability."

It was thus again held that the shipper was bound by the
value stated in the bill of lading. In the case of *Boston &
Maine R. Co.* v. *Hooker*, and in *O. S. L. R. Co.* v. *Homer,
supra*, it was held, however, that the limitation of value ap-
plies as against negligence of the carrier and that of his serv-
ants; that is, although the article the value of which is lim-
ited in the bill of lading is lost or destroyed through negli-
gence of the carrier or his servants, the shipper is, neverthe-
less, limited in his recovery to the value thus stated. In the
prevailing opinion of the case last cited, it is, however, said
that the decision is based upon the *Croninger* and the *Carl
Cases, supra*. Be that as it may, we can discover nothing in
either the Hooker Case or in the others preceding it whereby
a common carrier may avoid liability for negligence except-
ing to the extent of limiting his liability in the manner and
upon the grounds stated in those opinions. Indeed, the lan-
guage used in *Hart* v. *Pennsylvania R. Co.*, 112 U. S., p. 340,
5 Sup. Ct. 156, 28 L. Ed. 717, is again quoted and approved
in the Hooker case, namely, "the carrier must respond for
negligence up to that amount"; that is, the amount or value
of the article stated in the bill of lading and upon which
the rate or charge was based. While thus a common carrier
may by contract limit his liability for certain purposes even
as against his negligent acts or the negligent acts of his serv-

ants, yet it is not the law, not yet at least, that he may by contract or otherwise also absolve himself from all the duties which the law imposes upon him by reason of his calling or business. To the effect that he may not are all the authorities. *Railroad Co.* v. *Lockwood,* 17 Wall, 357, 21 L. Ed. 627; *Witting* v. *Railroad Co.,* 28 Mo. App. 103; *Terre H. & L. R. Co.* v. *Sherwood,* 132 Ind. 129, 31 N. E. 781, 17 L. R. A. 339, 32 Am. St. Rep. 239. Appellant thus having received the full benefit even as against its negligence of the stipulation respecting the value contained in the bill of lading, can it ask for more? Can it, under the facts and circumstances of this case, also insist upon the other stipulation with regard to the alleged duty of inspecting the car by the shipper? Assuming, without deciding, that the carrier, under certain conditions, may absolve himself from the duty of inspection by casting that duty upon the shipper, yet is that question involved here? We think not, for the following reasons: It should be remembered that the only defect that respondent discovered in the car before it was carried forward in the train was the defect in one of the car doors which he closed up as stated by him. The only other defect discovered was the hole in the roof, which was discovered by the young man who was riding in the car, as stated by him. For the purpose of this decision we shall also assume that if it was the duty of respondent to discover every defect mentioned in the bill of lading and report it, and that it was also the duty of the young man riding in the car to do the same, and that the latter's negligence, if it can be called such, is the negligence of respondent. Again, assuming that it was the duty of the shipper to search for and report defects, yet were the defects in question here of the kind and character referred to and contemplated in the bill of lading, and, if they were, can they, or either of them, be said to have been the proximate cause of the fire which destroyed the car and its contents? It seems to us that the defect in question really had nothing whatever to do with causing the fire, nor are they such as are referred to in the bill of lading. It certainly is not reasonable to assume that the defects mentioned in the bill of lading refer to any possible defect that may be found in a

car. The duty of inspection cast upon the shipper as expressed in the bill of lading is that he shall "satisfy himself that they (the cars) are sufficient and safe and in proper order and condition," and if he fails to do that, but accepts the car without inspection, then the acceptance by him shall be deemed an "acknowledgment  *  *  *  of the sufficiency and suitability in every respect of said cars." We think, therefore, that the only reasonable conclusion permissible is that the defects referred to in the bill of lading are such as may in some way affect the safety or suitability of the car for transportation purposes. Neither do we think that the defects there mentioned refer to such as can only become dangerous or operative by reason of some subsequent act of negligence of the carrier. In this case the evidence is to the effect that the trainmen placed the helper engine within three or four car lengths from the car in question, when, under the rule of the company, such engine should have been placed at least ten car lengths therefrom. The jury could thus well believe Snell's testimony to the effect that in going up the hill the helper engine cast out large and unusual quantities of cinders. They could further infer and believe from the evidence that some of those cinders were alive, and that one or more fell into the car, which was only a short distance from the engine, and set the fire in question. We think respondent was not required to anticipate that the trainmen would violate the rule of the company in placing the helper engine, as they did, nor did he have to anticipate that appellant would be negligent, as the jury found it was, in attaching an engine that would cast out large quantities of cinders. In other words, we are of the opinion that a shipper is not required to anticipate every possible act of negligence of which the carrier or his employees may be guilty during an interstate trip lasting perhaps several days. If such is the law, then perhaps the respondent should lose not only about one-half the value of his goods, as he must do by the contract of shipment, but he should lose their full value. We do not think that such is the law, or ever will be declared to be the law. At all events, we are clearly of the opinion that the Supreme Court of the United States has not yet so held, or at

least not so far as we know, in any case decided by that court. Whenever that court so decides, we shall cheerfully follow its decisions, but until then we must follow the law as we understand it to be. Moreover, we still think it is the duty of the carrier to provide the shipper with cars that are reasonably safe and reasonably suited and adapted for the use or purpose for which they are tendered to him. While it may be true that, if the shipper inspects a car and loads his goods into it, and he discovers a defect which may affect the safety or suitability of the car for transportation purposes, it is his duty to report the defect to the carrier, and, failing to do so, may, under a bill of lading like the one in question, be held to have lost his right to complain of that particular defect; yet where, as here, the defect can only become operative in case of the subsequent negligent acts of the carrier or its servants, we do not think the shipper's conduct in failing to report such a defect under such circumstances can have any effect upon his right to recover. We therefore hold that the court did not err in refusing to direct a verdict upon the ground just discussed.

The foregoing also disposes of a number of instructions given by the court in which it proceeded upon the theory that the respondent's right of recovery was not affected by the defects in the car shown in the evidence, and also of a number of appellant's requests in which the court was asked to charge that the defects, under the circumstances disclosed by the evidence, prevented a recovery on the part of respondent.

It is also contended that the court erred in submitting the case to the jury, for the reason that appellant's evidence to the effect that the helper engine which it was contended by respondent set fire to the car in question was equipped with proper and suitable appliances for arresting sparks and for preventing coals and fire from escaping therefrom, and which evidence, it is contended, was not disputed by respondent, and was therefore conclusive upon the question of appellant's negligence; that is, appellant had conclusively met and overcome respondent's prima facie case

of negligence. The authorities are not in harmony with regard to the right of a court to take the case from the jury under such circumstances. In this case, however, there was another and independent element alleged, which, it is contended, constituted negligence, namely, the placing of the helper engine, according to respondent's evidence, much nearer to the car in question than by the rule of the company it should have been placed. The evidence of such a rule was not disputed. Indeed, the trainmen admitted that such a rule existed. There are many cases, however, that hold that, although the evidence on the part of the carrier that his engine was properly equipped and was in good order is not disputed, the question of negligence upon the whole evidence is nevertheless for the jury. See *Great Northern Ry. Co.* v. *Coats*, 53 C. C. A. 382, 115 Fed. 452, where the question is thoroughly considered and discussed; *Continental Ins. Co.* v. *Chicago N. W. Ry. Co.*, 97 Minn. 467, 107 N. W. 548, 5 L. R. A. (N. S.) 99. In those cases numerous cases on both sides of the controversy are cited. We think the question of negligence, upon the whole record, was for the jury.

Neither can the cases of *Christensen* v. *Railroad Co.*, 35 Utah, 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159, and *Richards* v. *Railroad Co.*, 41 Utah, 99, 123 Pac. 933, have controlling influence here. A mere cursory reading of the two cases will at once disclose that the principle which controlled there is not applicable here.

Finally, it is insisted that the respondent violated the law in transporting explosives in the car which was burned, and for that reason cannot recover. The evidence showed that Mr. Gardner owned a Colt's revolver and a shotgun; that the revolver and shotgun were in the car, and that Gardner had placed some cartridges in the oven of one of the stoves, the number he did not remember, but said perhaps not less than ten and certainly not more than fifty. There may also have been, he said, a few loaded shells for the shotgun. Now, to our minds it is too plain to require argument that the placing of these articles in the car in the manner it was done did not violate the law prohibiting the

shipment of explosives and other dangerous articles, and the further claim that those cartridges prevented the trainmen from controlling the fire was all threshed out before the jury, and they passed upon that matter which is conclusive upon us.

Upon the whole record, therefore, we think the court committed no error affecting the substantial rights of appellant. We feel less hesitancy in declaring that result, for the reason that, if our conclusions are erroneous with respect to any question which arises under the Interstate Commerce Act, appellant may have the error corrected by taking the case to the Supreme Court of the United States.

For the reasons stated, the judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.